[No. S025000. Dec. 7, 1992.]

In re GARY WALTER JORDAN on Habeas Corpus.

118

COUNSEL

Quin Denvir, under appointment by the Supreme Court, for Petitioner.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, David I. Friedenberg and Robert M. Foster, Deputy Attorneys General, for Respondent.

OPINION

GEORGE, J.—This case presents the question whether the "prison-delivery" rule remains viable in California. The rule provides that a prisoner's notice of appeal is deemed timely filed if delivered to prison authorities within the 60-day filing period set forth in rule 31(a) of the California Rules

of Court.[1] (See *People* v. *Lepe* (1987) 195 Cal.App.3d 1347, 1349, fn. 2 [241 Cal.Rptr. 388]; *People* v. *Wychocki* (1987) 188 Cal.App.3d 1063, 1065 [233 Cal.Rptr. 830].) A recent Court of Appeal decision has held, however, that the prison-delivery rule no longer is applicable in California, instead concluding that a prisoner's notice of appeal is timely filed only when actually received by the appropriate county clerk within the 60-day period, or when the prisoner demonstrates that he or she placed the notice in the prison mail "sufficiently in advance of the filing deadline" that, in the normal course of postal operations, the county clerk would have received the notice by the 60th day after rendition of the judgment. (*People* v. *Casillas* (1990) 218 Cal.App.3d 1365, 1370-1371 [267 Cal.Rptr. 700]; accord, *People* v. *Grey* (1990) 225 Cal.App.3d 1336, 1340 [275 Cal.Rptr. 572].) We granted review to resolve the conflict among these decisions.

As we shall explain, we conclude that the prison-delivery rule, well-established in California jurisprudence when the filing period prescribed by rule 31(a) was 10 days in duration, continues to apply even though the period for filing an appeal was substantially extended in 1972 (to the 60 days presently provided). The prison-delivery rule ensures that an unrepresented defendant, confined during the period allowed for the filing of an appeal, is accorded an opportunity to comply with the filing requirements fully comparable to that provided to a defendant who is represented by counsel or who is not confined. Affording such equality of treatment is as important under the current 60-day filing period as it was under the former 10-day filing period.

The prison-delivery rule also furthers the efficient use of judicial resources by establishing a "bright-line" test that permits courts to avoid the substantial administrative burden that would be imposed were courts required to determine, on a case-by-case basis, whether a prisoner's notice of appeal was delivered to prison authorities "sufficiently in advance of the filing deadline" to permit the timely filing of the notice in the county clerk's office.

On the basis of these same considerations, the United States Supreme Court has concluded that the prison-delivery rule applies to filings by federal

---

[1]California Rules of Court, rule 31(a), provides in pertinent part: "In the cases provided by law, an appeal is taken by filing a written notice of appeal with the clerk of the superior court within 60 days after the rendition of the judgment or the making of the order. . . . [¶] Whenever a notice of appeal is received by the clerk of the superior court after the expiration of the period prescribed for filing such notice, the clerk shall mark it 'Received (date) but not filed' and advise the party seeking to file the notice that it was received but not filed because the period for filing the notice of appeal had elapsed. . . ."

All further references to rules are to the California Rules of Court unless otherwise indicated.

prisoners in federal proceedings (*Houston* v. *Lack* (1988) 487 U.S. 266 [101 L.Ed.2d 245, 108 S.Ct. 2379]), and, for similar reasons, the courts of other states also have recently endorsed the prison-delivery rule. (See, e.g., *Haag* v. *State* (Fla. 1992) 591 So.2d 614, 615-618; *Commonwealth* v. *Hartsgrove* (Mass. 1990) 407 Mass. 441 [553 N.E. 2d 1299, 1300-1303].) Because of the continued vitality of the reasoning underlying the prison-delivery rule, we conclude it should be reaffirmed.

I. FACTS

On November 7, 1990, a jury in San Bernardino County Superior Court convicted petitioner Gary Jordan of possession for sale of a controlled substance. (Health & Saf. Code, § 11351.) (Case No. MCR 83.) On December 13, 1990, another jury convicted petitioner of receiving stolen property (Pen. Code, § 496, subd. (1)) and two additional charges of possession for sale of a controlled substance (Health & Saf. Code, §§ 11351, 11378). (Case No. MCR 61.) On January 25, 1991, in these two cases, the trial court sentenced petitioner to a prison term totaling three years, eight months, which petitioner presently is serving in the state prison at Jamestown.

In his petition seeking a writ of habeas corpus, petitioner alleges that after the trial court's rendition of judgment, he discussed his appellate rights with his trial counsel, and counsel assured him he would handle the matter, either by preparing and filing a notice of appeal on petitioner's behalf or by preparing a notice which petitioner could file in propria persona. According to petitioner, however, several weeks passed without counsel preparing the notice of appeal.[2] Petitioner thereafter prepared the notice in propria persona, designating case No. MCR 61 and omitting case No. MCR 83. Petitioner dated the notice March 23, 1991 (the 57th day after the rendition of judgment) and, on that date, placed the notice in the California Department of Corrections mail service. Petitioner had addressed the envelope (containing the notice) to the court that had sentenced him, the San Bernardino County Superior Court, East Desert District, located in Joshua Tree. The envelope was postmarked March 25, 1991, in Stockton.

On April 1, 1991, the San Bernardino County Clerk for the *Central* District, located in San Bernardino, stamped petitioner's notice "received but

---

[2]Petitioner's trial counsel has related a different version of the facts, set forth in a May 21, 1991, letter from counsel to Appellate Defenders, Inc., the firm that assisted petitioner in his attempt to obtain relief in the Court of Appeal (see discussion, *post*). In this letter, counsel stated that prior to petitioner's sentencing, he provided petitioner with a notice of appeal for use in case No. MCR 83, having instructed petitioner that he did not handle appeals, but that petitioner could file the notice and request that other counsel be appointed. Counsel also stated in his letter that he had received an inquiry from petitioner's sister after sentencing and again disavowed appellate work, informing her that petitioner could modify the notice previously provided to him so as to include case No. MCR 61.

not filed—untimely." The county clerk informed petitioner that further information regarding his appellate rights could be obtained by contacting Appellate Defenders, Inc., located in San Diego. The record fails to explain why six days apparently were required to transport the letter from Stockton to San Bernardino.

His notice having been received, but not filed, petitioner, assisted by Appellate Defenders, Inc., thereafter filed in the Court of Appeal a "Request For Finding Of Constructive Filing Of Notice Of Appeal From Judgment Entered In Superior [Court] Case [Nos.] MCR 61/MCR 83." The Court of Appeal summarily denied the request, and this petition in propria persona for writ of habeas corpus followed.

Following our receipt of the petition, we ordered the Director of Corrections (hereafter, respondent) to show cause "why petitioner's notice of appeal should not be deemed constructively filed as of the date he delivered it to prison authorities for mailing to the court. (Compare *People* v. *Dailey* (1959) 175 Cal.App.2d 101 [345 P.2d 558] with *People* v. *Casillas* (1990) 218 Cal.App.3d 1365 [267 Cal.Rptr. 700].)"[3]

## II. DISCUSSION

### A. *The parties' contentions*

■ The question whether a notice of appeal has been filed in a timely manner presents a jurisdictional issue. Unless the notice is actually or constructively filed within the appropriate filing period, an appellate court is without jurisdiction to determine the merits of the appeal and must dismiss the appeal. (Rule 45(c) ["The time for filing a notice of appeal . . . shall not be extended. . . ."]; rule 45(e) ["The reviewing court for good cause may relieve a party from a default occasioned by any failure to comply with these rules, except the failure to give timely notice of appeal . . . ."]; *In re Benoit* (1973) 10 Cal.3d 72, 79-87 [109 Cal.Rptr. 785, 514 P.2d 97]; *People* v. *Slobodion* (1947) 30 Cal.2d 362, 365 [181 P.2d 868]; 6 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) §§ 3220-3224, pp. 3979-3984.)

■ Against the backdrop of these fundamental principles, petitioner contends his notice of appeal was constructively filed as of the date he delivered it to the prison authorities, regardless whether or not such delivery

---

[3]Because we limited the scope of our order to the prison-delivery issue, we need not and do not discuss petitioner's alternate contention that his reliance on trial counsel to handle his appeal excuses the untimely receipt, by the county clerk, of petitioner's notice of appeal. (See *ante*, fn. 2 and accompanying text.)

allowed sufficient time for the county clerk to receive the notice prior to expiration of the 60-day filing period. According to petitioner, his delivery of the notice to the prison authorities prior to expiration of the filing period manifested due diligence on his part, and the county clerk's subsequent refusal to file the notice violated petitioner's appellate rights. (See *In re Benoit, supra,* 10 Cal.3d 72; *People* v. *Slobodion, supra,* 30 Cal.2d 362; *People* v. *Dailey* (1959) 175 Cal.App.2d 101 [345 P.2d 558].)

Respondent characterizes petitioner's argument as anachronistic, contending it was derived from case law abrogated by the 1972 amendment to rule 31(a). According to respondent, the prison-delivery rule has been stripped of its persuasive force because the amendment's extension of the filing period from 10 days to 60 days allows ample time for the filing of a notice of appeal. Respondent therefore urges this court to adopt the elevated standard of diligence set forth recently by the Court of Appeal in *People* v. *Casillas, supra,* 218 Cal.App.3d 1365. As explained more fully below, *Casillas* held that, in the absence of a prisoner's demonstration that a county clerk's untimely receipt of a notice was the fault of someone beyond the prisoner's control, relief from default should be denied. (*Id.* at p. 1370.) ▮▮▮ Because petitioner in the present case allegedly fails to make that showing, respondent contends *Casillas* mandates the rejection of petitioner's notice of appeal.[4]

B. *Whether the prison-delivery rule remains viable in the wake of the 1972 amendment to rule 31(a)*

1. *People v. Slobodion: Origin of the prison-delivery rule*

The touchstone case underlying application of the prison-delivery rule is *People* v. *Slobodion, supra,* 30 Cal.2d 362, which addressed the 10-day filing period then prescribed by rule 31(a) for a notice of appeal. In *Slobodion,* a prisoner deposited with prison authorities his notice of appeal six days prior to expiration of the filing period, but they failed to forward it in a manner that would have permitted its timely filing. The notice was received by the county clerk five days after expiration of the filing period. In denying a

---

[4]Although respondent contends also that the petition does not contain sufficient facts to allow a determination as to whether petitioner acted with "due diligence" in communicating with his attorney and in filing his notice of appeal, respondent does not contend that the allegations of the petition are insufficient to establish that petitioner delivered his notice of appeal to prison officials within the 60-day period. The verified allegations of the petition clearly are sufficient to raise the issue whether the prison-delivery rule is viable. (See *In re Swain* (1949) 34 Cal.2d 300, 304 [209 P.2d 793].) Because habeas corpus lies "to determine that an appeal is pending and to effect preparation of the record so as to perfect the appeal" (*In re Benoit, supra,* 10 Cal.3d at p. 78), we proceed to an examination of the substantive issues presented.

motion to dismiss the appeal, we observed that the county clerk's untimely receipt of the prisoner's notice was not the fault of the prisoner, but appeared to have resulted from the negligence of prison authorities. We therefore held that the prisoner's delivery of his notice of appeal to prison authorities "constituted a constructive filing within the prescribed time limit. . . ." (30 Cal.2d at pp. 367-368.) We further held that any other conclusion would "run counter" to the case of *Cochran* v. *Kansas* (1942) 316 U.S. 255 [86 L.Ed. 1453, 62 S.Ct. 1068], which determined that prison officials who suppressed a prisoner's appeal documents, rendering it impossible for him to perfect an appeal, violated the equal protection clause of the Fourteenth Amendment to the United States Constitution by refusing " 'privileges of appeal . . . afforded to others.' " (30 Cal.2d at p. 368.)

Subsequently, numerous appellate court decisions embraced this prison-delivery rule when presented with facts similar to those in *People* v. *Slobodion, supra*, 30 Cal.2d 362, or with facts suggesting that the nonnegligent conduct of prison authorities had played a significant role in delaying transmittal of the prisoner's notice of appeal. (See, e.g., *In re Gonsalves* (1957) 48 Cal.2d 638, 645-646 [311 P.2d 483]; *People* v. *Frye* (1953) 117 Cal.App.2d 101, 102-103 [225 P.2d 205].) Additionally, appellate courts applied *Slobodion* to situations where the prisoner, in failing to file his or her notice within the 10-day filing period, had relied upon statements or conduct of prison authorities which had lulled the prisoner into a false sense of security (see *People* v. *Head* (1956) 46 Cal.2d 886, 887-889 [299 P.2d 872]; *People* v. *Calloway* (1954) 127 Cal.App.2d 504, 505-507 [274 P.2d 497]), or where the prisoner had relied upon statements of counsel relating that the notice would be filed on the prisoner's behalf. (See *People* v. *Tucker* (1964) 61 Cal.2d 828, 831-832 [40 Cal.Rptr. 609, 395 P.2d 449]; *People* v. *Casillas* (1964) 61 Cal.2d 344, 345 [38 Cal.Rptr. 721, 392 P.2d 521].)

### 2. *People v. Dailey: Extension of the rule*

In *People* v. *Dailey, supra*, 175 Cal.App.2d 101, the appellate court extended the prison-delivery rule to facts which suggested that *no one but the prisoner* was responsible for the untimely receipt of the notice of appeal. In *Dailey*, the prisoner's notice was dated and postmarked on the *final* day of the 10-day filing period, and received by the county clerk on the following day. There was no evidence prison authorities or others had acted to thwart the prisoner's delivery of the notice to the prison authorities. Nonetheless, the court upheld the notice, observing: "We can see no good reason why [the constructive filing] theory should not apply to the presentation to the prison authority of a notice of appeal at any time within the 10-day period. Otherwise, the actual time within which a person who is confined in prison

may *act* is reduced beyond the time in which a person who is not so confined may act. Thus a person on bail has until 5 o'clock of the tenth day to act to file his notice or have someone file for him. The person in prison has no such time. He must act to file his notice with the prison authorities at the very least on the ninth day and in most instances on the eighth day as from some of the prisons it will take two days for the mail to reach many of the county clerks' offices in this state. Thus, a person in prison, by reason of his imprisonment, loses from one to two days of the time allowed him to act. He has no direct access, as has the nonprisoner, to the proper county clerk's office. . . . In order to give him the same rights and same justice as a nonprisoner it is necessary and right that it be held that a filing with prison authorities at any time within the 10 days is a constructive filing at that time in the office of the proper county clerk." (*Id.* at p. 104, original italics; see also *People* v. *Milton* (1969) 270 Cal.App.2d 408, 410, fn. 1 [75 Cal.Rptr. 803] [upholding a notice of appeal delivered to a sheriff's deputy on the ninth day after rendition of the judgment, and received by the county clerk on the eleventh day].)

■ The case at bar presents facts generally similar to those set forth in *People* v. *Dailey, supra,* 175 Cal.App.2d 101, in that we are faced here too with a prisoner's attempt to mail a notice of appeal near the expiration of the filing period prescribed by rule 31(a). One obvious circumstance, however, distinguishes the two cases: In *Dailey,* the prisoner's notice was due within *10* days of rendition of the judgment, whereas in the instant case, rule 31(a), as amended in 1972, provided a *60*-day filing period. (See Historical Note, rule 31(a), 23 West's Cal. Codes Ann. Rules, pt. 1 (1981 ed.) p. 278.) We therefore look to the 1972 amendment, and the case law construing it, to ascertain whether, as respondent contends, the 1972 amendment abrogated the holdings in *Dailey* and its progeny.

### 3. *In re Benoit: The amendment interpreted*

This court's decision in *People* v. *Slobodion, supra,* 30 Cal.2d 362, was followed by a considerable number of appellate court decisions which addressed the timeliness of a prisoner's notice of appeal. (See, e.g., *In re Benoit, supra,* 10 Cal.3d at p. 82 [citing these cases].) The difficulties experienced by our courts in revisiting continually this fact-specific, procedural question were significant in the years following *Slobodion.* (See *People* v. *Dailey, supra,* 175 Cal.App.2d at p. 107.) In 1961, the Judicial Council amended rule 31(a) to provide a streamlined procedure by which a party seeking to file a notice of appeal could petition the reviewing court for relief from a county clerk's rejection of the notice as untimely. (See Historical Note, *op. cit. supra.*) The 1972 amendment, while eliminating this streamlined procedure from rule 31(a), extended the filing period from 10 days to

60 days. (Historical Note, *op. cit. supra*; see also *People* v. *Serrano* (1973) 33 Cal.App.3d 331, 333 [109 Cal.Rptr. 30].)[5]

In *In re Benoit, supra,* 10 Cal.3d 72, we were faced with the question whether the 1972 amendment to rule 31(a) had abrogated the constructive filing doctrine. The case arose from separate habeas corpus proceedings, considered together, in which prisoners' attorneys had agreed to file a notice of appeal, but failed to do so in a timely manner. The Director of Corrections argued that the notices of appeal were untimely and should not be ordered filed because the 1972 amendment had eliminated altogether the basis for the constructive filing doctrine, rendering the 60-day period "mandatory and jurisdictional." (10 Cal.3d at pp. 78-79.) We rejected this contention, holding that the principle of constructive filing remained viable after the 1972 amendment and should be applied where the untimeliness of the notice resulted from the negligence of counsel. (*Id.* at pp. 84-89; see also *People* v. *Lepe, supra,* 195 Cal.App.3d at p. 1349, fn. 2 [relying upon *Benoit* to uphold a notice of appeal "signed" (and presumably delivered to prison authorities) eight days prior to expiration of the sixty-day filing period and received by the court clerk two days late, without discussing the factual basis for the delay]; *People* v. *Wychocki, supra,* 188 Cal.App.3d at p. 1065 [relying upon *People* v. *Milton, supra,* 270 Cal.App.2d 408, 410, fn. 1, to uphold a notice of appeal addressed to the defendant's trial attorney, delivered to the prison custodian five days prior to expiration of the sixty-day filing period, and received by the court clerk three days late because the custodian failed for six days to mail the notice].)

In *In re Benoit, supra,* 10 Cal.3d 72, we thus rejected respondent's argument that the 1972 amendment removed the justification for the constructive filing doctrine. We see no reason to reconsider that general issue. (See also *Castro* v. *Superior Court* (1974) 40 Cal.App.3d 614, 619 [115 Cal.Rptr. 312] [*Benoit* "stand[s] for the proposition that the 1972 amendments did not deprive the courts of the power to mandate the processing of apparently late appeals under proper circumstances."].) Our holding in *Benoit* that the constructive filing doctrine survived the 1972 amendment is not, however, completely dispositive of the case at bar. In contrast to the facts of the present case, the circumstances involved in *Benoit* suggested that the county clerks' untimely receipt of the prisoners' notices had been the fault of persons other than the prisoners. This circumstance aligned *Benoit*

[5]Concurrent with the adoption of the 1972 amendment, the Judicial Council adopted rule 250, which requires superior court judges, after imposing sentence in a criminal case upon conviction after trial, to advise the defendant of his or her "right to appeal, of the necessary steps and time for taking an appeal, and of the right of an indigent defendant to have counsel appointed by the reviewing court." (Former rule 250 [amended and renumbered as rule 470, effective Jan. 1, 1991].)

with *People* v. *Slobodian, supra*, 30 Cal.2d 362, rather than with *People* v. *Dailey, supra*, 175 Cal.App.2d 101. Indeed, although in *Benoit* we recognized the *Dailey* decision as one of several which had embraced the constructive filing doctrine (10 Cal.3d at p. 82), it was unnecessary to our decision for us to determine whether the 1972 amendment had abrogated *Dailey* and, accordingly, we offered no comment on this specific question. In contrast to *Benoit*, the present case places the question of *Dailey*'s viability squarely before us.

### 4. *People* v. *Casillas: The conflict with Dailey*

Respondent contends that because prisoners no longer are subject to the potentially onerous requirement of filing a notice of appeal within the first 10 days after the rendition of judgment, a prisoner is entitled to relief from an untimely notice of appeal only where the prisoner demonstrates "due diligence." Respondent urges that due diligence is established by a showing that the county clerk's untimely receipt of the notice of appeal was not the fault of the prisoner. Specifically, respondent urges that we adopt the standard set forth in *People* v. *Casillas, supra*, 218 Cal.App.3d 1365, and deny relief in this case because petitioner allegedly has failed to establish that the county clerk's untimely receipt of his notice "is attributable to negligence or inaction on the part of custodial officials, a dereliction of duty by counsel, or some other cause not the fault of the party seeking to appeal . . . ." (*Id.* at p. 1366; accord *People* v. *Grey, supra*, 225 Cal.App.3d at p. 1340.)

Respondent's argument directs us to the crux of the issue before us—the conflict between *Dailey*, which held that a prisoner acts with requisite diligence by delivering a notice of appeal to prison authorities at any time within the filing period, and *Casillas*, which requires a prisoner, in order to establish that due diligence was exercised, to deliver a notice of appeal to prison authorities sufficiently in advance of the filing deadline to ensure timely receipt by the county clerk. In addressing this issue, we compare the analyses set forth by the Courts of Appeal in *Casillas* and *Dailey*.

In *Casillas*, the prisoner waited until the 59th day after the rendition of judgment before placing his notice of appeal in the prison mailbox. The notice was received by the county clerk four days beyond the sixty-day period. In rejecting the prisoner's request for relief premised on a constructive filing theory, the appellate court distinguished *People* v. *Dailey, supra*, 175 Cal.App.2d 101, observing that *Dailey* had been "decided during the era

when the time for filing was only 10 days." (*People* v. *Casillas, supra*, 218 Cal.App.3d at p. 1369.) Tersely noting that "[t]he distinction between 10 days and 60 days speaks for itself," *Casillas* declared: "The conditions which created the need for the 'prison filing' doctrine created in *People* v. *Dailey* have been eliminated and with them the reasons to continue indulging that particular legal fiction." (*Id.* at p. 1370.) The *Casillas* court also expressly disagreed with *People* v. *Wychocki, supra*, 188 Cal.App.3d 1065, insofar as *Wychocki* "may be read as holding that the 'prison delivery' rule of *People* v. *Dailey* survived the 1972 amendment to Rule 31[a] . . . ." (218 Cal.App.3d at p. 1369.)[6]

*Casillas* identified the prison-delivery rule as "a judicial response to the perception that the 10-day time limit was unreasonably short and imposed an unfair burden on prisoners. It was this very problem which the 1972 amendment sought to remedy. . . . [¶] As *Benoit* held, [the 1972 amendment and other rule changes] did not eliminate the constructive filing exception to the 60-day rule in cases where an appeal is untimely because of negligence or misfeasance by prison officials or counsel. However, we conclude that [these rule changes] did abrogate the *Dailey* doctrine." (*People* v. *Casillas, supra*, 218 Cal.App.3d at pp. 1369-1370.)

In reaching its conclusion, *Casillas* relied upon the following statement from our opinion in *Benoit*: " '[T]he purpose of extending the time to appeal from 10 days to 60 days was to eliminate what was believed to have been an unduly short period especially for the defendant in custody and under a procedure no longer permitting an oral notice of appeal in open court. We believe that the 60-day period is now sufficient for defendants, including those in prison or other custody, who desire to take the appeal personally and without counsel, particularly in view of the notification of appeal rights . . . .' " (*People* v. *Casillas, supra*, 218 Cal.App.3d at p. 1370, citing *In re Benoit, supra*, 10 Cal.3d at p. 88.) *Casillas* thus interpreted *Benoit* as standing for the proposition that a prisoner—like the nonprisoner—has the responsibility of ensuring that his or her notice of appeal is received by the county clerk prior to expiration of the 60-day filing period. (218 Cal.App.3d at p. 1370.)

Although the language of *Benoit* relied upon by *Casillas* is ambiguous, we believe that the *Casillas* court, in concluding that *Benoit* had abrogated the

---

[6]The *Casillas* court apparently believed that *Wychocki* was the only reported decision (issued after the 1972 amendment) suggesting that "the mere delivery of a notice of appeal to prison officials within the 60-day period constitutes a constructive filing." (218 Cal.App.3d at p. 1369.) In fact, however, the appellate court in *People* v. *Lepe, supra*, 195 Cal.App.3d at page 1349, footnote 2, held that a prisoner's notice of appeal "signed" (and presumably delivered to prison authorities) eight days prior to expiration of the filing period and received two days after the expiration date was "timely filed under the constructive filing exception to the 60-day limit." (*Id.*, citing *In re Benoit, supra*, 10 Cal.3d at p. 84.)

prison-delivery rule, read too much into this passage. As noted above, *Benoit* specifically cited the prison-delivery rule (as described in *Dailey*) as representing an integral component of California's constructive filing doctrine (see *In re Benoit, supra,* 10 Cal.3d at p. 82), and nothing in *Benoit* suggests an intent to abolish this rule. Although in stating that "[w]e believe that the 60-day period is now sufficient for defendants, including those in prison or other custody, who desire to take the appeal personally and without counsel" (10 Cal.3d at p. 88), we indicated our belief that a prisoner should be able to file a notice of appeal within 60 days, we did not suggest that a notice of appeal delivered to prison authorities within that period might be untimely. In view of the circumstances underlying our decision in *Benoit,* and the disposition reached in that case, our comment regarding the sufficiency of the 60-day period was not essential to our decision, and clearly our holding did not rely upon it.

■ We cannot agree with *Casillas*'s conclusion that the extension of the filing period from 10 days to 60 days eliminated the basis for the prison-delivery rule. (*People* v. *Casillas, supra,* 218 Cal.App.3d 1365.) As we have seen, the *Dailey* decision, in adopting that rule, explained that its principal purpose was to ensure that prisoners unrepresented by counsel would have an opportunity to file a notice of appeal equal to the opportunity afforded prisoners with counsel and to that afforded unincarcerated defendants. In this regard, the *Dailey* court observed that, were it to require that a notice of appeal actually be received by the clerk prior to expiration of the filing period, "the actual time within which a person who is confined in prison may *act* [would be] reduced beyond the time in which a person who is not so confined may act." (*People* v. *Dailey, supra,* 175 Cal.App.2d at p. 104, original italics.) The *Dailey* court discerned no principled basis for tolerating such disparity. (*Id.* at pp. 104-105.) Nor do we.

The United States Supreme Court, applying the prison-delivery rule to appeals taken from the federal courts, emphasized the same point in *Houston* v. *Lack, supra,* 487 U.S. 266. The high court stated: "Such prisoners cannot take the steps other litigants can take to monitor the processing of their notices of appeal and to ensure that the court clerk receives and stamps their notices of appeal before the . . . deadline. Unlike other litigants, *pro se* prisoners cannot personally travel to the courthouse to see that the notice is stamped 'filed' or to establish the date on which the court received the notice. Other litigants may choose to entrust their appeals to the vagaries of the mail and the clerk's process for stamping incoming papers, but only the *pro se* prisoner is forced to do so by his situation. And if other litigants do choose to use the mail, they can at least place the notice directly into the hands of the United States Postal Service (or a private express carrier); and

they can follow its progress by calling the court to determine whether the notice has been received and stamped, knowing that if the mail goes awry they can personally deliver notice at the last moment or that their monitoring will provide them with evidence to demonstrate either excusable neglect or that the notice was not stamped on the date the court received it. *Pro se* prisoners cannot take any of these precautions; nor, by definition, do they have lawyers who can take these precautions for them." (*Id.* at pp. 270-271 [101 L.Ed.2d at pp. 250-251].)

Thus, the conclusion reached by the *Casillas* court (*People* v. *Casillas*, *supra*, 218 Cal.App.3d 1365), that the prison-delivery rule has lost its vitality because that rule was adopted when the filing period comprised only 10 days, overlooks the critical point that the rule rests in large measure on the proposition that prisoners and nonprisoners are entitled to have available an equal period of time in which to pursue their appellate rights. At present, a nonprisoner who waits until the 60th day after rendition of judgment to deliver personally a notice of appeal to the appropriate county clerk is entitled to have his or her appeal heard on the merits. Although we do not condone delay of this type, such action by a defendant is deemed to be sufficient. The prison-delivery rule simply ensures that a prisoner who exercises the same degree of diligence, by personally delivering to prison authorities a notice of appeal on the 60th day, is accorded similar treatment.

Adherence to the prison-delivery rule also furthers the efficient use of judicial resources. In rejecting the rule, the *Casillas* court indicated that if a notice of appeal is received by the county clerk after the 60-day deadline, a prisoner, in order to obtain relief under the constructive filing doctrine, "must establish that the notice of appeal was placed in the prison mail . . . *sufficiently in advance of the filing deadline that in the normal course of prison mailing and United States Postal procedures*" the county clerk would have received the notice by the 60th day after the rendition of judgment. (*People* v. *Casillas*, *supra*, 218 Cal.App.3d at p. 1370, italics added.) It is obvious, however, that application of such an amorphous standard, on a case-by-case basis, would impose an extreme burden upon the courts. In light of the uncertainty involved in mail delivery, the length of time "normally" needed to ensure timely delivery is subject to abridgment by numerous variables beyond the prisoner's control. For example, a prisoner who delivers to prison authorities a notice of appeal several days prior to a year-end filing deadline might discover that the notice failed to arrive in the county clerk's office in a timely manner due to a seasonal deluge of mailings. Similarly, a prisoner incarcerated in a remote area of the state, or several hundred miles from the appropriate county clerk, might not have the same number of days for mailing a notice of appeal as a prisoner more

fortuitously located. In view of the increased demands upon our appellate courts, it is not the best use of judicial resources to require those courts in such situations to make determinations as to whether notices of appeal transmitted by individual prisoners were processed in the "normal course" of events.

The prison-delivery rule eliminates the foregoing uncertainties. As the United States Supreme Court observed in *Houston* v. *Lack, supra,* "[M]aking filing turn on the date the *pro se* prisoner delivers the notice to prison authorities for mailing is a bright-line rule, not an uncertain one." (487 U.S. at p. 275 [101 L.Ed.2d at p. 255].) Similarly, we agree with the Court of Appeal in *Dailey* that affirming equality of access to our courts "is necessary and right" and "will greatly simplify" the processing of criminal appeals when the notice of appeal is not received by the county clerk within the filing period prescribed by rule 31(a). (*People* v. *Dailey, supra,* 175 Cal.App.2d at pp. 104, 107.) In view of the high volume of criminal appeals pursued in the California courts,[7] and the burdensome task involved in attempting to assess the diligence of prisoners on a case-by-case basis, we believe the administrative benefits of adhering to such a bright-line rule will be considerable.

█ We therefore hold that a prisoner's notice of appeal is deemed to have been filed in the office of the appropriate county clerk on the date, within the filing period prescribed by rule 31(a), on which it was delivered to the prison authorities. If the notice of appeal is received by the county clerk following expiration of the 60-day filing period, the prisoner who seeks to pursue his or her appellate rights has the burden of establishing that the notice of appeal was delivered to prison authorities within the 60-day period.[8]

III. CONCLUSION

We conclude that petitioner is entitled to the relief he seeks. █ ▬▬ Accordingly, we grant the petition for writ of habeas corpus, and order the Clerk of the San Bernardino County Superior Court to file the notice of

---

[7]In the fiscal year 1990-1991, notices of appeal were filed in the Courts of Appeal in 6,665 criminal cases and 1,453 juvenile cases. (Judicial Council of Cal. Ann. Rep. (1992) Judicial Statistics, Courts of Appeal, Summary of Filings, table 3, vol. II, p. 25.)

[8]Insofar as *People* v. *Casillas, supra,* 218 Cal.App.3d 1365, and *People* v. *Grey, supra,* 225 Cal.App.3d 1336, conflict with the views expressed herein, they are disapproved.

appeal received by the clerk on April 1, 1991, in People v. Jordan, thus permitting the appeal in case Nos. MCR 61 and MCR 83 to proceed.[9]

We of course express no opinion with respect to the substance of petitioner's appeal.

Lucas, C. J., Mosk, J., Panelli, J., Kennard, J., Arabian, J., and Baxter, J., concurred.

---

[9]As previously noted, the notice of appeal that petitioner delivered to the prison authorities on March 23, 1991 (the 57th day after the rendition of judgment) referred specifically only to case No. MCR 61, and not to case No. MCR 83, although judgment and sentencing were rendered simultaneously in both cases. The letter sent to petitioner by the county clerk on April 4, 1991, informing him that the notice of appeal was not filed because it was received on April 1, 1991, after expiration of the 60-day period provided in rule 31(a), also stated: "Please be advised that your appeal did not include case number MCR 83 and I have enclosed a copy of the minute order dated 1/25/91 for your information." This letter also advised petitioner that he could contact Appellate Defenders, Inc., in San Diego for further information concerning his "appeal rights." Petitioner thereafter, with the assistance of Appellate Defenders, Inc., filed in the Court of Appeal a document entitled "Request For Finding Of Constructive Filing Of Notice Of Appeal From Judgment Entered In Superior Case MCR 61/MCR 83." In that document, petitioner stated that, because he "is unschooled in the law, he failed to include both case numbers on his notice of appeal . . . [and] requests that the notice of appeal be corrected to reflect case number MCR 83 as well as MCR 61."

Under the foregoing circumstances, we deem petitioner's in propria persona notice of appeal, designating only case No. MCR 61, sufficient to constitute notice in both cases. (Rule 1(a) ["A notice of appeal shall be liberally construed in favor of its sufficiency."]; *In re Gonsalves, supra,* 48 Cal.3d at pp. 640, 643 [letter from prisoner to judge stating that prisoner was dissatisfied with judgment and requesting that judge accept notice of appeal, deemed sufficient despite prisoner's failure to include the name or the case number of his case]; see also *People* v. *Hollis* (1959) 176 Cal.App.2d 92, 94 [1 Cal.Rptr. 293] [where a prisoner improperly seeks to appeal from a sentence, appellate courts have viewed the notice liberally and treated it as an appeal from the judgment].) Our holding on this point is not meant to suggest that a prisoner is relieved of the responsibility of designating accurately the particular judgment from which an appeal is taken, nor does it suggest that upon receipt of a notice of appeal, court clerks need undertake the task of reviewing the reporter's transcript of the proceedings to determine whether judgment was imposed in any other case. Rather, in view of the particular facts of this case (i.e., petitioner's notice of appeal indicating that he appealed "from the final judgment of conviction and sentence imposed" by the trial court on January 25, 1991, and the county clerk's indicated awareness, as soon as the notice of appeal was received by that office, that two separate case numbers potentially were involved in the appeal from the judgment entered that date), we deem it appropriate, in the interests of justice, to permit petitioner's appeal to be fully heard on the merits in both cases. (See *People* v. *Tucker, supra,* 61 Cal.2d 828, 832; *People* v. *Robinson* (1954) 43 Cal.2d 143, 145-146 [271 P.2d 872]; 6 Witkin & Epstein, *supra,* §§ 3214-3217, at pp. 3974-3977.)