Filed 7/2/14  (unmodified version attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>MARLON RIVERA,<br><br>　　　Defendant and Appellant. | A140128<br><br>(San Francisco City & County<br>Super. Ct. No. 218652)<br><br>**ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING**<br>**[NO CHANGE IN JUDGMENT]** |

**BY THE COURT:**

It is ordered that the published opinion filed herein on June 5, 2014, be modified as follows:

(1) On page 1, the third sentence of the first paragraph shall be modified to read:

Because defendant has established a clear lapse of counsel's professional duty, we shall grant the motion and direct that the late notice of appeal be accepted for filing.

(2) On page 9, the sentence beginning "In these circumstances" shall be modified to read:

In these circumstances, judicial economy is best served by allowing defendant to seek relief by simple motion (see *People v. Zarazua* (2009) 179 Cal.App.4th 1054, 1062-1052), rather than insisting on the cumbersome procedures attending a formal petition for relief in habeas corpus and a full-flown evidentiary hearing.

(3) On page 9, the first sentence under the heading **DISPOSITION** is modified to read:

1

The motion is granted.

This modification does not effect a change in the judgment.

The petition for rehearing is denied.


Dated:                                                 _____ Acting P.J.

| | |
|---|---|
| Trial Court: | Superior Court of the City and County of San Francisco |
| Trial Judge: | Honorable Harold E. Kahn |
| Attorney for Defendant and Appellant: | Victor J. Morse, under appointment by the Court of Appeal |
| Attorneys for Plaintiff and Respondent: | Kamala D. Harris, Attorney General, Hanna Chung, Deputy Attorney General |

Filed 6/5/14 unmodified version

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARLON RIVERA,<br><br>    Defendant and Appellant. | A140128<br><br>(San Francisco City & County<br>Super. Ct. No. 218652) |

Defendant Marlon Rivera has moved for leave to file a late notice of appeal from a postjudgment restitution order. Although defendant's situation cannot be fitted into the limited circumstances where state law authorizes late filing, federal constitutional law holds that the failure of defendant's trial counsel to file a timely notice of appeal amounts to the ineffective assistance of counsel prohibited by the Sixth Amendment. Because defendant has established a clear lapse of counsel's professional duty, we shall treat defendant's moving papers as a petition for a writ of habeas corpus, grant the petition, and direct that the late notice of appeal be accepted for filing.

Defendant was convicted in the Superior Court of the City and County of San Francisco of one count of first degree murder (Pen. Code, §§ 187); two counts of robbery (Pen. Code, § 211); one count of attempted robbery (Pen. Code, §§ 211, 664); one count of conspiracy (Pen. Code, § 182); and one count of active participation in a criminal street gang (Pen. Code, § 186.22), together with various enhancements. On September 24, 2013, defendant was sentenced to state prison for an aggregate term of 35 years to life. On October 2, 2013, defendant's counsel, Wm. Michael Whelan, Jr., filed a timely notice of appeal on his behalf from the judgment of conviction.

1

On November 25, 2013, the trial court held a hearing to determine the amount of restitution. At the conclusion of the hearing, the court made orders directing defendant to pay almost $25,000 to the Victim Compensation and Government Claims Board, together with approximately $80,000 for two individual victims.

It was not until February 11, 2014, that Mr. Whelan, with the assistance of Mr. Victor Morse, who had been appointed as defendant's appellate counsel, attempted to file a notice of appeal from the restitution order. The clerk of the San Francisco Superior Court declined to accept the notice for filing, but advised Mr. Whelan that "A copy of your appeal [*sic*] has been forwarded to the First District Appellate Project along with this letter." Mr. Morse now submits a "Appellant's Motion For Constructive Filing of His Late Notice of Appeal from the Restitution Order."

The motion is accompanied by two declarations. The first is by Mr. Whelan. He states he did not file a second notice of appeal "because I believed that none was necessary. I mistakenly believed that the notice of appeal filed on October 2, 2013 would apply to all appealable issues in the case, including the restitution order. I did not know that under California law a post-judgment restitution order requires its own notice of appeal." (See *People v. Guardado* (1995) 40 Cal.App.4th 757, 763.) The second declaration is by defendant, who states: "I would like to appeal from the restitution order. If I had known that Mr. Whelan would not file a timely notice of from the restitution order, I would have attempted to file such a timely notice of appeal myself."

The Attorney General filed opposition to the motion, only partially responding to defendant's arguments. We were sufficiently concerned by this omission that we ordered oral argument on the motion.

## DISCUSSION

" 'An untimely notice of appeal is "wholly ineffectual: The delay cannot be waived, it cannot be cured by nunc pro tunc order, and the appellate court has not power to grant relief, but must dismiss the appeal on motion of a party or on its own motion." ' " (*In re Chavez* (2003) 30 Cal.4th 643, 650; accord, *In re Jordan* (1992) 4 Cal.4th 116, 121.) Except in time of public emergency, "no court may extend the time to file a notice

2

of appeal." (Cal. Rules of Court, rule 8.308(a); *id.*, rule 8.60(d) ["a reviewing court may relieve a party from default for any failure to comply with these rules *except the failure to file a timely notice of appeal*," italics added].) Nevertheless, the rule of dismissal is subject to a small area of exceptions known as "constructive" filing, which creatively utilize legal fictions to treat the notice of appeal as timely filed. (See *Silverbrand v. County of Los Angeles* (2009) 46 Cal.4th 106, 113-114.)

The first recognized instance of constructive filing was the so-called 'prison-delivery" or "prison filing" rule unveiled in *People v. Slobodion* (1947) 30 Cal.2d 362. There, prior to expiration of the time for filing a notice of appeal, a convicted inmate delivered such a notice to prison authorities for mailing to the trial court clerk. The fiction was that giving the notice to a prison guard for mailing would be treated as tendering the notice to a court clerk for filing. (See *In re Benoit* (1973) 10 Cal.3d 72, 81-82 and decisions cited; cf. *People v. Casillas* (1990) 218 Cal.App.3d 1365, 1370 [urging that "[t]he conditions which created the need for the 'prison filing' doctrine . . . have been eliminated and with them the reasons to continue indulging that particular legal fiction"], disapproved by *In re Jordan*, *supra*, 4 Cal.4th 116, 130, fn. 8; *Hollister Convalescent Hosp., Inc. v. Rico* (1975) 15 Cal.3d 660, 677 (dis. opn. of Tobriner, J.) ["the legal fiction of constructive filing" is merely "[d]isguising a doctrine of reasonable reliance"].)

The prison delivery rationale expanded. As explained by our Supreme Court: "Subsequent to *Slobodion*, we applied the prison-delivery rule to similar factual situations in which it appeared that the conduct of prison authorities, negligent or otherwise, had played a significant role in delaying transmittal of the prisoner's notice of appeal. [Citations.] We additionally applied the constructive filing doctrine to situations in which the prisoner, although failing to file a notice within the . . . filing period, had relied upon statements or conduct of prison authorities that lulled the prisoner into a false sense of security. [Citations.]" (*Silverbrand v. County of Los Angeles*, *supra*, 46 Cal.4th 106, 115, fn. 4.)

The next expansion came in 1973, with *In re Benoit, supra*, 10 Cal.3d 72. Again, as explained by our Supreme Court: "In *Hollister Convalescent Hosp., Inc. v. Rico . . .*, we observed that *Benoit* extended the principle of constructive filing announced in *People v. Slobodion . . .* 'to situations wherein an incarcerated criminal appellant has displayed diligent but futile efforts in seeking to insure that the attorney has carried out his responsibility.' In *Benoit*, we considered the petitions for writ of habeas corpus of two defendants who claimed that, as prisoners, they had relied upon their trial attorneys' express agreements to timely file notices of appeal and that the attorneys had failed to do so. . . . [W]e held that the doctrine applied when the untimely filing of a notice of appeal was due to certain negligence of trial counsel. [Citations.]

"In *Benoit*, we applied the doctrine of constructive filing based upon a *promise or representation* made by each defendant's attorney that he would timely file a notice of appeal on his client's behalf. [Citation.] We relied in part upon the circumstances that the assurances had been made by the defendants' *trial counsel*, noting that 'the prisoner would be more justified in relying on his counsel who had represented him and might have some continuous concern for him . . . .' [Citation.]" (*In re Chavez, supra*, 30 Cal.4th 643, 657-658.)

Neither of these categories fits defendant's situation. There was no actual notice of appeal entrusted to any "public official[] charged with the administration of justice" *(People v. Martin* (1963) 60 Cal.2d 615, 617), so there can be no application of the prison delivery doctrine. There was no promise or representation by Mr. Whelan that he would file a second notice of appeal on defendant's behalf, hence no neglect on his part. With no such articulated assurance, defendant could have no resulting expectation that Mr. Whelan would perfect a timely appeal from the restitution order. Consequently, defendant cannot demonstrate his " 'diligent but futile efforts in seeking to insure that his attorney has carried his responsibility.' " (*In re Chavez, supra*, 30 Cal.4th 643, 657.) No aspect of constructive filing theories can reach this situation. (See *People v. Aguilar* (2003) 112 Cal.App.4th 111, 116.)

4

But these are state law constructs.  Defendant sees them trumped by federal constitutional law, specifically the Sixth Amendment's guarantee of the effective assistance of counsel, as construed by the United States Supreme Court in *Roe v. Flores-Ortega* (2000) 528 U.S. 470.

*Flores-Ortega* involved a defendant who pled guilty to various felony charges in a California state prosecution.  Whether his trial attorney agreed to file a notice of appeal was unclear, but what was clear was that Flores-Ortega did not consent to counsel *not* filing the notice.  The issue addressed by the court was—within the familiar matrix of *Strickland v. Washington* (1984) 466 U.S. 668—"Is counsel deficient for not filing a notice of appeal when the defendant has not clearly conveyed his wishes one way or the other?" (*Roe v. Flores-Ortega*, *supra*, 528 U.S. 470, 477.)  Although noting that "California imposes on trial counsel a *per se* duty to consult with defendants about the possibility of an appeal" (*id*. at p. 479, citing Pen. Code, § 1240.1, subd. (a)[1]), the court nevertheless decided to hold "as a c*onstitutional* matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable." (*Id*. at p. 479.)

"We instead hold that counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal . . . , or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.  In making this

---

[1] Which provides in pertinent part:  "In any noncapital  criminal . . . case wherein the defendant would be entitled to the appointment of counsel on appeal if indigent, it shall be the duty of the attorney who represented the person at trial to provide counsel and advice as to whether that arguably meritorious grounds exist for reversal or modification of the judgment on appeal."  Subdivision (b) provides that the attorney also has the duty "to execute and file on his or her client's behalf a timely notice of appeal when the attorney is of the opinion that arguably meritorious grounds exist for a reversal or modification of the judgment or orders to be appealed from, and where, in the attorney's judgment, it is in the defendant's interest to pursue any relief that may be available to him or her on appeal; or when directed to do so by a defendant having a right to appeal."

determination, courts must take into account all the information counsel knew or should have known. [Citation.] Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." (*Roe v. Flores-Ortega*, *supra*, 528 U.S. 470, 480.)

"We 'normally apply a "strong presumption of reliability" to judicial proceedings and require a defendant to overcome that presumption' [citation], by 'show[ing] how specific errors of counsel undermined the reliability of guilt.' [Citation.] Thus, in cases involving mere 'attorney error,' we require the defendant to demonstrate that the errors 'actually had an adverse effect on the defense.' [Citations.]

"In some cases, however, the defendant alleges not that counsel made specific errors in the course of representation, but rather that during the judicial proceeding he was either—actually or constructively—denied the assistance of counsel altogether. 'The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage.' [Citation.] The same is true on appeal. Under such circumstances, '[n]o specific showing of prejudice [is] required,' because 'the adversary process itself [is] presumptively unreliable.' [Citations.]

"Today's case is unusual in that counsel's alleged deficient performance arguably led not to a judicial proceeding of disputed reliability, but rather to the forfeiture of a proceeding itself. According to [the defendant], counsel's deficient performance deprived him of a notice of appeal and hence, an appeal altogether. Assuming those allegations are true, counsel's deficient performance has deprived [the defendant] of the appellate proceeding altogether. In [citations], we held that the complete denial of counsel during a critical stage of a judicial proceeding mandates a presumption of prejudice because 'the adversary process itself' has been rendered 'presumptively unreliable.' [Citation.] The even more serious denial of the entire judicial proceeding itself, which a defendant wanted at the time and in which he had a right, similarly demands a presumption of prejudice. Put simply, we cannot accord any ' "presumption

of reliability," ' [citation], to judicial proceedings that never took place." (*Roe v. Flores-Ortega*, *supra*, 528 U.S. 470, 482-483.)

The power of this presumption of prejudice may be slight, and it is rebuttable. Yet it does assist the defendant's hardly onerous burden of proof: "[T]o show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." (*Roe v. Flores-Ortega*, *supra*, 528 U.S. 470, 484.) The defendant is not required to specify the arguments he or she would have presented, much less whether those arguments would have prevailed. All the defendant must prove, with the considerable aid of Penal Code section 1240.1, is that trial counsel's performance was deficient and deprived the defendant "of an appeal that . . . otherwise would have [been] taken." (*Id*. at p. 484.) "[W]hen counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." (*Ibid*.)

*Flores-Ortega* adds a third category of situations where the strict jurisdictional time period in criminal appeals will be relaxed. There is scant reason to insist on strict application of the state law 60-day limit if the defendant can get his or her appeal with a habeas petition using the hardly burdensome *Flores-Ortega* federal standard for ineffective assistance of counsel. (See *People v. Byron* (2009) 170 Cal.App.4th 657, 664-666; cf. *In re Benoit*, *supra,* 10 Cal.3d 72 78 [" '[i]n the absence of another adequate remedy, habeas corpus lies to correct the erroneous denial of a right to an effective appeal' "].)

At oral argument, the Attorney General resisted granting defendant's motion, relying on the general principle that ineffective assistance of counsel claims are best handled in habeas corpus proceedings where there are greater procedures for developing factual issues. The Attorney General has never taken the position that *Flores-Ortega* is inapplicable to postconviction proceedings which generate an appealable order; she only

7

presents the prudential argument that the two declarations do not provide a complete picture of what occurred between counsel and client after the restitution order was made.

Habeas procedures are ordinarily preferred, in the interests of judicial economy, " ' . . . "[if] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," . . .' " (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266.) But this is not the usual habeas situation because it does not involve the reasoning behind a tactical trial decision, and perhaps measuring the impact of that decision in the light of a full trial record.

It is true that defendant must rely on two inferences from the two declarations, specifically: (1) that *if* Mr. Whelan had advised that a second notice of appeal was required for the restitution order, defendant would have authorized it, and (2) with that authorization, Mr. Whelan would have filed a notice (as he did following the judgment). However, with the benefit of Mr. Whelan's declaration, we know why he failed to file a second notice of appeal—he mistakenly believed the already-filed notice of appeal from the judgment would also reach the restitution order. With the benefit of defendant's declaration, we know that defendant wished to appeal that order. The details of any conversation between defendant and Mr. Whelan regarding securing review of the restitution order—if there was such a conversation—would be exceedingly unlikely to disprove these inferences. The situation thus looks like one where there simply could be no satisfactory explanation for not consulting defendant and filing a second notice of appeal.

Defendant easily satisfies the two requirements of a *Flores-Ortega* ineffective assistance of counsel claim. Mr. Whelan's declaration leaves no doubt that he did not comply with the mandates of Penal Code section 1240.1, and thus his performance was professionally deficient, when he failed to consult with defendant file a separate notice of appeal from the restitution order. Defendant's declaration is equally sufficient to demonstrate that he always wanted to appeal from the restitution order. The notice of appeal from the judgment of conviction is indicative of defendant's desire to seek

appellate review, certainly not a wish to conclude the entirety of the criminal proceedings brought against him.  (See *Roe v. Flores-Ortega*, *supra*, 528 U.S. 470, 480.)  Defendant has therefore established a more than reasonable probability that he was deprived "of an appeal that . . . otherwise would have [been] taken" and is therefore entitled to relief.  (*Id.* at p. 484.)  In these circumstances, judicial economy is best served by allowing defendant to seek relief by simple motion—even if it is treated as a habeas corpus petition (see *People v. Zarazua* (2009) 179 Cal.App.4th 1054, 1060-1063; *People v. Byron*, *supra*, 170 Cal.App.4th 657, 666)—rather than insisting on the cumbersome procedures attending a formal petition for relief in habeas corpus and a full-blown evidentiary hearing.

## DISPOSITION

The motion, treated as a petition for a writ of habeas corpus, is granted.  The clerk of the San Francisco Superior Court is directed to accept for filing the notice of appeal received on February 11, 2014.

_____
Kline, P.J.


We concur:


_____
Richman, J.


_____
Brick, J.[*]


_____
[*] Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

| | |
|---|---|
| Trial Court: | Superior Court of the City and County of San Francisco |
| Trial Judge: | Honorable Harold E. Kahn |
| Attorney for Defendant and Appellant: | Victor J. Morse, under appointment by the Court of Appeal |
| Attorneys for Plaintiff and Respondent: | Kamala D. Harris, Attorney General, Hanna Chung, Deputy Attorney General |