Filed 9/30/16  P. v. Stone CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>NEIL EDWARD STONE,<br><br>    Defendant and Appellant. | F072002<br><br>(Super. Ct. No. VCF109275C-03)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Tulare County.  Joseph A. Kalashian, Judge.[†]

Sandra Gillies, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Janet E. Neeley, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

[*]Before Poochigian, Acting P.J., Kane, J. and Franson, J.

[†]Retired judge of the Tulare Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

The trial court denied Neil Edward Stone's motion for appointment of counsel and postconviction DNA testing pursuant to Penal Code section 1405.[1]  Because this was the second such motion filed by Stone, the trial court had discretion to grant or deny the motion.  (§ 1405, subd. (b)(3)(B).)  We conclude the trial court did not abuse its discretion and affirm the order denying the motion.

## FACTUAL AND PROCEDURAL SUMMARY[2]

In 2005, Stone was convicted of murder during the commission of a burglary or robbery (§§ 187, 190.2, subd. (a)(17)), home invasion robbery while acting in concert with others (§§ 211, 213, subd. (a)(1)(A)), first degree burglary (§ 459), and destruction of evidence (§ 135).  The jury also found true the allegation that Stone personally used a dangerous and deadly weapon in the murder and home invasion counts.  (§ 12022, subd. (b)(1).)  Stone was sentenced to life in prison without the possibility of parole on the murder count, a consecutive one year for the weapon enhancement, and a concurrent determinate term of 12 years on the remaining counts.

The victim, Robert Trejo, sold drugs out of his home.  He was found on his bed, alive but not responsive.  He was pronounced brain dead at the hospital within a few days.  The autopsy revealed numerous injuries to Trejo's head and body.  The cause of death was cardiorespiratory arrest as a result of the severe injuries to Trejo's head.

An anonymous phone call led detectives to codefendant Dana Wilson, who provided a statement to the police implicating Stone and others.  Stone was interviewed by the police.  Stone initially denied participating in the murder, but when told his accomplices had implicated him, Stone admitted that he agreed to a plan to beat Trejo over some slight and steal his drugs from him.  However, Stone did not intend to kill

---

[1]All statutory references are to the Penal Code unless otherwise stated.

[2]The summary of the 2005 proceedings was obtained from our opinion affirming the convictions with a slight modification of the sentence.  (*People v Stone* (Oct. 12, 2006, F047889) [nonpub. opn.].)

2.

Trejo.  When the plan was executed, Trejo kept fighting back, so Stone struck Trejo numerous times with a baseball bat, including multiple strikes to Trejo's head.  In a second interview, Stone estimated he hit Trejo with the bat at least 15 times and in the head at least three times.  After one strike to the head, Stone told investigators that Trejo fell to the bed and started making a snoring sound.  Stone tapped Trejo's head one more time, apparently to make sure Trejo was not feigning unconsciousness.  Trejo's head made a hollow sound when this final tap occurred.

Apparently in early 2011, Stone made a motion for exonerating DNA testing pursuant to section 1405.[3]  On July 11, 2011, the trial court appointed the Tulare County Public Defender's Office to investigate the claim and, if appropriate, file a motion for testing.  The Tulare County Public Defender's Office reviewed the case and declined to file a motion for DNA testing.

Apparently in April 2015, Stone filed a second motion for DNA testing and appointment of counsel pursuant to section 1405.  On May 14, 2015, the trial court denied the motion without appointing counsel.  Stone appeals the denial of this motion.

### DISCUSSION

Stone's motion was made pursuant to section 1405.

> "Section 1405, subdivision (a) permits '[a] person who was convicted of a felony and is currently serving a term of imprisonment' to 'make a written motion … for … forensic [DNA] testing.'  The purpose of section 1405 is to provide a procedure 'for the post-conviction testing of DNA evidence for defendants who did not have that technology available at the time of trial and where identity was a significant issue that resulted in his or her conviction.'  (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1342 (1999–2000 Reg. Sess.) as amended Mar. 30, 2000.)"  (*Jointer v. Superior Court* (2013) 217 Cal.App.4th 759, 764.)

---

[3]Stone filed a request that we take judicial notice of the docket from Tulare Superior Court reflecting Stone's first motion for appointment of counsel and DNA testing.  The Attorney General did not object to the request.  Accordingly, we take judicial notice of the docket as requested by Stone.

Section 1405, subdivision (b) provides that an indigent prisoner may also request appointment of counsel in order to prepare a motion for DNA testing. The prisoner is required to include an assertion that he or she was not the perpetrator of the crime and must explain how DNA testing is relevant to his or her innocence. If all requirements are met, the trial court must appoint counsel to investigate the issue. If appropriate, counsel will then file a motion for DNA testing. (§ 1405, subd. (b)(3)(A).)

However, when a prisoner otherwise qualified for appointment of counsel has previously had counsel appointed for the purpose of investigating and, if appropriate, filing a motion for DNA testing, the trial court "may, in its discretion, appoint counsel to investigate and, if appropriate, to file a motion for DNA testing under this section …." (§ 1405, subd. (b)(3)(B).)

Since this was Stone's second motion for appointment of counsel and DNA testing, the trial court had discretion in ruling on the request to either admit or deny the request. We review the exercise of that discretion for an abuse. A trial court abuses its discretion when it acts in an arbitrary or capricious manner, or when its action exceeds the bounds of reason when all of the circumstances are considered. (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121.)

As an initial matter, we must consider if Stone's notice of appeal invoked our jurisdiction. Section 1405, subdivision (k) provides that "[a]n order granting or denying a motion for DNA testing under this section shall not be appealable, and shall be subject to review only through petition for writ of mandate or prohibition …. The petition shall be filed within 20 days after the court's order granting or denying the motion for DNA testing."

Stone's "MOTION FOR DNA TESTING; APPOINTMENT OF COUNSEL IN ORDER TO PREPARE AND CONDUCT AN INVESTIGATION FOR DNA TESTING PURSUANT TO PENAL CODE § 1405(b)(1), (3)(B)" was denied on May 15, 2015. On

4.

May 24, 2015, Stone served by mail his notice of appeal. The notice of appeal was filed on July 14, 2015.

The notice of appeal appears to be timely filed pursuant to the prison-delivery rule. Stone's proof of service indicates the notice of appeal was placed in the prison mail delivery system within 20 days of the order denying the motion. (*In re Jordan* (1992) 4 Cal.4th 116, 119.) However, the issue remains whether the trial court's order is appealable or must be challenged through a petition for a writ of mandate as provided in section 1405, subdivision (k). Stone argues that subdivision (k) only applies when a motion is made for DNA testing. Stone asserts that because he was requesting appointment of counsel to investigate whether a motion for DNA testing should be filed, subdivision (k) does not apply in this case and the order is appealable.

We disagree with Stone on both the law and the facts. Stone's motion was clear in that it not only sought appointment of counsel, but also was seeking DNA testing. He presented at length all of the reasons he believed DNA testing would prove he did not murder Trejo but simply assaulted him while another person delivered the fatal blow after Stone left Trejo's residence. Since we conclude Stone was seeking DNA testing, subdivision (k) of section 1405 required him to file a petition for a writ of mandate and not a notice of appeal.

Moreover, even if we were to consider Stone's motion to be for appointment of counsel, we conclude Stone's reading of subdivision (k) is too narrow. Section 1405 pertains to only one issue: postconviction DNA testing under certain circumstances. Appointment of counsel for indigent defendants is only one part of the process. It is absurd to suggest that when the Legislature limited the method of obtaining appellate review of trial court rulings on motions made for DNA testing to proceedings by a writ of mandate or prohibition, it intended to permit appeals from the intermediate step of the trial court's decision to deny appointment of counsel to an indigent prisoner. Therefore, we conclude the unambiguous intent of the Legislature was to limit appellate review of

5.

all of the issues presented by section 1405 to petitions for a writ of mandate or prohibition.

Anticipating our conclusion, Stone requests that we construe his filings as a petition for a writ of mandate compelling the trial court to appoint counsel in this case. Accordingly, we will construe Stone's filings as a petition for a writ of mandate and address the merits of the issue.

As stated above, the issue is whether the trial court abused its discretion when it denied Stone's request for appointment of counsel. We have reviewed the lengthy motion filed by Stone. Stone requested that DNA testing be performed on an unidentified palm print found at Trejo's residence. The palm print was on the duct tape Stone purchased to bind Trejo. Stone asserts the mere existence of the palm print proves that someone else must have murdered Trejo after Stone left Trejo's residence. According to Stone, DNA testing would thereby exonerate him. Apparently, this is the same piece of evidence, and the same argument, Stone made in his first request for DNA testing.

Stone's logic is flawed. The unidentified palm print does not lead to any conclusion, especially not that someone other than Stone murdered Trejo. When the palm print was left on the tape cannot be established. It may have been placed on the tape before it was purchased from the store, or by one of the people who provided medical treatment to Trejo after his beaten body was discovered or when the tape was collected as evidence.

Even if the print was left on the tape after Stone beat Trejo and before medical personnel arrived—i.e., another person arrived at the scene and, as Stone speculates, stole items from Trejo—it is not proof that this other person further beat Trejo. As Stone admitted in his statement to police, Stone beat Trejo unconscious. Considering the serious and extensive injuries caused by Stone, it seems unlikely that Trejo ever regained consciousness or, if he did, was able to extricate himself from the restraints affixed by

6.

Stone. Therefore, this purported perpetrator would have no reason to cause further injury to Trejo.

Stone's statement to the police also suggests the beating he inflicted on Trejo caused all of the injuries Trejo suffered. Stone hit Trejo in the head forcefully at least twice with a baseball bat, knocking him unconscious.[4] Notwithstanding Stone's analysis of the injuries, there is no medical evidence that all of Trejo's injuries could not be caused by two forceful blows to the head with a baseball bat.

We also observe that each of the facts cited by Stone was known at the time of his trial. There is no new evidence presented by Stone, only speculation.

Not only are each of these reasons sufficient to establish the trial court acted well within its discretion in denying Stone's motion, this was the second motion pursuant to section 1405 filed by Stone. As a result of the first section 1405 motion filed by Stone, the trial court appointed counsel to investigate and file a motion for DNA testing if counsel concluded it would be appropriate. Counsel declined to file a motion, thus leading to the conclusion counsel decided it would not be appropriate to file a motion for testing. Since Stone did not present any new facts in this motion that were not known at the time of trial, the trial court likely, and reasonably, concluded there was no merit to this motion.

The flaws in Stone's analysis could be examined even more extensively, but it is unnecessary to do so. The evidence establishing Stone was the person who killed Trejo was overwhelming, especially since Stone admitted beating Trejo with a baseball bat, which included several strikes to Trejo's head. Stone's admissions to the police, which were played to the jury, left no doubt as to the identity of the perpetrator. Accordingly,

---

[4]Stone contends, with some support in the record, that he only tapped Stone on the head with the bat after the second blow. Of course, the fact Stone told investigators Trejo's head sounded hollow when it was tapped suggests the internal damage was substantial.

the trial court did not abuse its discretion when it denied Stone's motion for appointment of counsel and DNA testing.

## DISPOSITION

The order denying DNA testing is affirmed.