40 P.3d 886

**Vincent M. SETALA, Plaintiff–Appellant,**

**v.**

**J.C. PENNEY COMPANY, Sharlene Pacheco, Lamar Kauffman, Ryan Takahashi, Deanna Strikolis, Jubahl Hashimoto, and Gary Harms, Defendants–Appellees.**

No. 22943.

Supreme Court of Hawai'i.

Feb. 8, 2002.

Vincent Setala, on the briefs, plaintiff-appellant, pro se.

Lynn B.K. Costales (Gallagher & Associates), on the briefs, for defendants-appellees.

LEVINSON, RAMIL, and ACOBA, JJ.; with MOON, C.J., concurring separately, and with whom NAKAYAMA, J., joins.

Opinion of the Court by ACOBA, J.

We hold that a notice of appeal is deemed "filed" for purposes of Hawai'i Rules of Appellate Procedure (HRAP) Rule 4(a) on the day it is tendered to prison officials by a pro se prisoner. Accordingly, we remand this case to the first circuit court (the court) [1] for an evidentiary hearing, consistent with this opinion, on the issue of whether Plaintiff–Appellant Vincent M. Setala (Plaintiff) tendered his notice of appeal to prison officials on or before the deadline.

I.

This case arises out of a shoplifting incident on March 21, 1994, when Plaintiff entered Defendant–Appellee J.C. Penney Company's (J.C. Penney) store at the Ala Moana Shopping Center and was subsequently detained by J.C. Penney employees. After being apprehended by J.C. Penney employees, Plaintiff pled no contest and was sentenced to a term of incarceration. Plaintiff subsequently filed a complaint against J.C. Penney and others [hereinafter collectively, Defendants] for personal injury arising out of the foregoing incident. At the time that he did so, Plaintiff was, and currently remains, incarcerated at the Hālawa Correctional Facility on O'ahu. Defendants filed a motion to dismiss on February 12, 1999, arguing that the two-year statute of limitations had run over this matter.

---

1. The Honorable Dexter D. DelRosario presided

between the time of the incident, March 21, 1994, and the date Plaintiff had filed his complaint, March 7, 1997. On April 16, 1999, the court granted Defendants' motion, agreeing that the applicable statute of limitations period had run.

Plaintiff appealed, signing his notice of appeal on May 14, 1999. The notice was not filed until June 10, 1999. Plaintiff also filed a motion for reconsideration on June 10, 1999. On September 22, 1999, Plaintiff's motion for reconsideration was denied. Due to the motion for reconsideration, the time for appeal was tolled, and this court dismissed Plaintiff's first appeal ·on November 1, 1999. Plaintiff filed a second notice of appeal, which was filed on November 5, 1999, but which was dated October 17, 1999.

Defendants filed a statement of jurisdiction arguing that Plaintiff was fourteen days late in filing his notice, and that Plaintiff's appeal should be dismissed as untimely. In his statement of jurisdiction, Plaintiff contends that, within the thirty-day period for appeal, he "placed the Notice of Appeal into the Hālawa Prison Mail System on October 18, 1999, which date may be ascertained by the

Correctional Officer's signature with date/time information that is written upon the back of the envelope at the time it is (by prison policy) sealed,[ ]stamped 'confidential', and then placed in the prison mailbox." No envelope, however, is attached to the notice of appeal.

## II.

Plaintiff contends that his notice of appeal is timely on the basis of the "Houston Rule," set out by the United States Supreme Court in *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988). In that case, the Court, recognizing the unique circumstances of pro se prisoners, held that a notice of appeal in a habeas corpus case is deemed filed, under the rules pertaining to civil cases, at the time the prisoner delivers the notice to prison authorities for forwarding to the courts.[2] Relying on Federal Rules of Appellate Procedure (FRAP) Rules 3 and 4, the Court determined that "nothing in Rules 3 and 4 compels the conclusion that, in all cases, receipt by the clerk of the district court is the moment of filing."[3] *Id.* at 274,

---

2. The pro se appellant in *Houston* filed an appeal from a district court's dismissal of his habeas corpus petition. *See* 487 U.S. at 268, 108 S.Ct. 2379. The prisoner deposited it with the prison authorities for mailing to the District Court twenty-seven days after the order. *See id.* This date of deposit was recorded in the prison log of outgoing mail. *See id.* The notice of appeal was not filed, however, until thirty-one days after the order, which was outside the thirty-day appeal period. *See id.* Further, the record did not contain the envelope in which the notice of appeal was mailed, and therefore did not contain the postmark or any other evidence of when the prison authorities actually mailed the letter. *See id.* The petitioner may have mistakenly used the post office box number of the state supreme court rather than that of the federal district court (both of which were in Jackson, Tennessee, approximately 81 miles from the prison). *See id.* The Sixth Circuit dismissed the appeal as untimely. *See id.* at 269, 108 S.Ct. 2379. The Supreme Court subsequently granted certiorari. *See id.*

3. The *Houston* Court construed FRAP Rule 4(a). *See* 487 U.S. at 272, 108 S.Ct. 2379. FRAP Rule 4(a) states, "When a civil appeal is permitted by law, the notice of appeal shall be filed within 30 days after entry of the judgment or appealable order. The notice of appeal shall be filed with the clerk of the court from which the appeal is taken." According to the Court, "Rules 3(a) and

4(a)(1) thus specify that the notice should be filed 'with the clerk of the district court[,]' " and that while "[t]here is ... no dispute here that the notice must be directed to the clerk of the district court[,] ... the question is one of timing, not destination: whether the moment of 'filing' occurs when the notice is delivered to prison authorities or at some later juncture in its processing." *Id.* at 272–73, 108 S.Ct. 2379.

HRAP Rule 4(a) is similar to FRAP Rule 4(a), although arguably somewhat less ambiguous than the federal rule. HRAP Rule 4(a) states that "the notice of appeal required by Rule 3 shall be filed by a party with the clerk of the court or agency appealed from within 30 days after the date of entry of the judgment or order appealed from." HRAP Rule 3 similarly does not require receipt by the clerk. "An appeal permitted by law from a court or agency to the Hawai'i appellate courts shall be taken by filing of a notice of appeal with the clerk of the court within the time allowed by Rule 4." HRAP Rule 3. Further, Hawai'i Rules of Civil Procedure Rule 5 states that "[t]he filing of pleadings and other papers with the court as required by these rules shall be made by filing them with the clerk of the court, except that the judge may permit the papers to be filed with him or her."

Although there is a difference between the federal rule and HRAP Rule 4(a), other jurisdictions with similar appellate court rules to HRAP Rule

108 S.Ct. 2379. Pointing out that, unlike other civil litigants, pro se prisoner litigants cannot personally travel to the courthouse to ensure that their notice is stamped "filed" by the clerk, *id.* at 271, 108 S.Ct. 2379, the Court departed from the general rule that receipt by the court clerk *is* required by the declared deadline:

> The situation of prisoners seeking to appeal without the aid of counsel is unique. Such prisoners cannot take the steps other litigants can take to monitor the processing of their notices of appeal and to ensure that the court clerk receives and stamps their notices of appeal before the 30 day deadline.

*Id.* at 270–71, 108 S.Ct. 2379. Because a prisoner has no choice but to turn over his or her notice of appeal to prison authorities for forwarding to court clerks, the pro se prisoner is not similarly situated with other civil litigants. *See id.* at 275, 108 S.Ct. 2379.

Although the *Houston* Court based its holding on an interpretation of the federal rules, other jurisdictions have also based their adoption of the "mailbox rule" on constitutional equal protection and equal court access grounds. *See Haag v. State,* 591 So.2d 614, 617 (Fla.1992) (discussing the constitutional implications of not allowing a "mailbox rule").

A rule other than the mailbox rule would interject a level of arbitrariness that could undermine equal protection and equal access to the courts. For example, two pro se inmates who delivered a document to prison officials at the same time, seeking the same relief, and facing the same court deadline, could be treated quite differently based entirely on happenstance. One inmate's petition might make it to the courthouse on time, while the other's might be delayed for unknown reasons. The first would obtain a full hearing, while the second would be denied relief. Such arbitrariness cannot fairly be characterized either as equal protection or equal access to the courts, and it therefore cannot be allowed.

*Id.* In *Haag,* the Supreme Court of Florida addressed the state constitutional implications of denying application of the mailbox rule to incarcerated prisoners, when considering a pro se motion for post-conviction relief. *See id.* at 615–17. "Under the Florida Constitution,[4] all persons have a right to equal protection of the laws.... Obviously, this includes a right of equal access to the courts, which serve as the final arbiter of whether life or liberty [or property] may be forfeited lawfully." *Id.* at 617.

Similar considerations would appear to pertain under the Hawai'i Constitution.[5] Of

---

4(a) have adopted the *Houston* rationale. *See* Arizona Rules of Civil Appellate Procedure Rule 9(a) ("A notice of appeal required by Rule 8 shall be filed with the clerk of the superior court not later than 30 days after the entry of the judgment from which the appeal is taken, unless a different time is provided by law.") *and Mayer v. State,* 184 Ariz. 242, 908 P.2d 56 (Ariz.App.1995); California Rules of Court Rule 31(a) ("In the cases provided by law, an appeal is taken by filing a written notice of appeal with the clerk of the superior court within 60 days after the rendition of the judgment or the making of the order.") *and In re Jordan,* 4 Cal.4th 116, 13 Cal.Rptr.2d 878, 840 P.2d 983 (1992); Massachusetts Rules of Appellate Procedure Rule 4(b) ("[T]he notice of appeal required by Rule 3 shall be filed with the clerk of the lower court within thirty days after entry of the judgment or order appealed from; or entry of a notice of appeal by the Commonwealth; or the imposition of sentence.") *and Commw. v. Hartsgrove,* 407 Mass. 441, 553 N.E.2d 1299 (1990). *See also Nigro v. Sullivan,* 40 F.3d 990, 994 (9th Cir.1994) (" '[File],' left undefined, [is] susceptible to the construction given [it] in *Houston* [.]").

4. Art. I, § 2 of the Florida Constitution states in relevant part:

> All natural persons, female and male alike, are equal before the law and have inalienable rights, among which are the right to enjoy and defend life and liberty, to pursue happiness, to be rewarded for industry, and to acquire, possess and protect property; except that the ownership, inheritance, disposition and possession of real property by aliens ineligible for citizenship may be regulated or prohibited by law.

5. The Hawai'i Constitution states:

> No person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of the person's civil rights or be discriminated against in the exercise thereof because of race, religion, sex or ancestry.

Haw. Const. art. I, sec. 5.

course, in holding that the "mailbox rule" applies to this case, we express no opinion as to the merits of Plaintiff's substantive tort claims but are concerned only with the principle that, under our constitution, every person is guaranteed the equal protection of the laws and equal access to the courts.

## III.

The "mailbox rule" established by *Houston* applies specifically to civil cases. *See In re Flanagan*, 999 F.2d 753, 758 (3d Cir.1993) (extending the *Houston* rule to bankruptcy appeals because "[a] *pro se* prisoner seeking to appeal a bankruptcy court order faces precisely the same problems as a prisoner who wishes to file a *pro se* appeal from an order dismissing a habeas petition"); *Tapia–Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir.1999) ("Since, with regard to the difficulties inherent in being a *pro se* prisoner litigant, we see no difference between the filing of a court action and the filing of an administrative claim, we hold that [the mailbox rule] applies to a[ Federal Torts Claims Act] administrative filing."). Since the decision in *Houston*, state courts have also adopted the "mailbox rule" in both civil and criminal cases. *See, e.g., Ex parte Powell*, 674 So.2d 1258, 1259 (Ala.1995); *In re Jordan*, 4 Cal.4th 116, 13 Cal.Rptr.2d 878, 840 P.2d 983, 992 (1992); *Haag*, 591 So.2d at 615–18; *Commw. v. Hartsgrove*, 407 Mass. 441, 553 N.E.2d 1299, 1300–03 (1990). *Cf. Hamel v. State*, 338 Ark. 769, 1 S.W.3d 434, 436 (Ark.1999); *State ex rel. Shimkus v. Sondalle*, 239 Wis.2d 327, 620 N.W.2d 409, 412 (2000) (distinguishing *Houston*, because "filing" in state court also includes other procedures such as paying fees).

Although most litigation initiated by pro se prisoners relates to § 1983 claims against prison officials, police, and other government employees [6] and involves habeas corpus petitions and other post-conviction relief,[7] the mailbox rule also applies when defendants are private litigants.[8]  In *Veteto v. Yocum*, 793 So.2d 814 (Ala.Civ.App.2001), Veteto, an inmate in the Alabama state prison system, sued another prisoner, Yocum, for the balance of a loan Veteto claimed he had made to Yocum. *See id.* at 815. The district court dismissed the case for lack of prosecution when neither prisoner made an appearance in court. *See id.* Veteto filed a motion for reconsideration and simultaneously appealed to the circuit court. *See id.* The circuit court dismissed the appeal, due to the pending motion for reconsideration. *See id.* Plaintiff filed a second complaint, which was again dismissed because neither party appeared for trial. *See id.* at 815–16. Plaintiff filed a notice of appeal, which was stamped by the circuit clerk as "filed" on March 29, 2000, more than 14 days after the dismissal of his case. *Id.* at 816. Plaintiff had written on his notice of appeal, "Submission date: March 20, 2000." *Id.* He also, in an affidavit filed later, indicated that on March 20, 2000, three days before the expiration of the 14–day period, he had given the notice of appeal to a prison official for mailing. *See id.*

In considering the timeliness of the notice, the Alabama Court of Civil Appeals extended *Houston* to civil complaints, as Alabama had first considered and adopted the *Houston* rule in criminal cases. The appellate court stated that "we believe that the considerations outlined by the United States Supreme Court in Houston are not changed by the nature of the litigation involved." *Id.* at 817. Thus, the court held that the appeal was timely filed and should not have been dismissed. *See id.*

---

**6.** *See, e.g., Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir.1993), *rev'd on other grounds on reh'g*, 25 F.3d 81 (2d Cir.1994); *Garvey v. Vaughn*, 993 F.2d 776, 783 (11th Cir.1993); *Faile v. Upjohn Co.*, 988 F.2d 985, 986 (9th Cir.1993); *Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 734 (4th Cir.1991); *Hostler v. Groves*, 912 F.2d 1158, 1161 (9th Cir.1990) ("Given the broad language of *Houston* and its important policy concerns, we conclude that *Houston* applies to notices of appeal filed in non-habeas civil cases by incarcerated prisoners acting *pro se*."), *cert. denied*, 498

U.S. 1120, 111 S.Ct. 1074, 112 L.Ed.2d 1180 (1991).

**7.** *See, e.g., Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir.), *cert. denied*, — U.S. —, 122 S.Ct. 197, 151 L.Ed.2d 139 (2001); *Burns v. Morton*, 134 F.3d 109, 110 (3d Cir.1998).

**8.** In searching through 1,225 cases citing to *Houston*, we have found *no court* that has refused to adopt the *Houston* rule on the basis that the defendant is a private party.

Similarly, the mailbox rule was applied to private litigants in *Faile v. Upjohn Co.*, 988 F.2d 985 (9th Cir.1993), in which a pro se prisoner alleged that his use of the prescription drug Xanax, manufactured by defendant The Upjohn Company, resulted in depression and violent outbursts, ultimately leading to his being seriously wounded by police officers who were reacting to his violent behavior. *See id.* at 986. The plaintiff was subsequently imprisoned pursuant to convictions for assault with a deadly weapon and attempted murder. *See id.*

While incarcerated, the plaintiff filed his pro se complaint. *See id.* During litigation, a pretrial order required plaintiff to respond to defendant's interrogatories and request for production in order for the court to reconsider its dismissal against plaintiff. *See id.* Defendant claimed those responses were postmarked two days beyond the deadline, and the trial court denied plaintiff's motion and dismissed the action. *See id.* at 987.

The Ninth Circuit looked to the policy considerations enunciated in *Houston* and extended the *Houston* rule to discovery documents. *See id.* at 987–89. The court determined that the plaintiff complied with the service deadline by tendering the documents to prison officials. *See id.* at 988–89. The court further remanded the case to the district court for reconsideration, noting that "[w]hen a pro se prisoner alleges that he timely complied with a procedural deadline by submitting a document to prison authorities, the district court must either accept that allegation as correct or make a factual finding to the contrary upon a sufficient evidentiary showing by the opposing party." *Id.* at 989.

### IV.

The *Houston* Court believed that prison mail logs would provide sufficient evidence of the date the mail was turned over to the prison officials. *See Houston*, 487 U.S. at 275, 108 S.Ct. 2379. Accordingly, it adopted a bright-line constructive filing rule as practicable, because "[t]he pro se prisoner does not anonymously drop his [or her] notice of appeal in a public mailbox—he [or she] hands it over to prison authorities who have well-developed procedures for recording the date and time at which they receive papers for mailing and who can readily dispute a prisoner's assertions that he [or she] delivered the paper on a different date." *Id.* Because "the prisoner confined to his [or her] cell ... can usually only guess the prison authorities, the Postal Service, or the court clerk is to blame for any delay[,]" *id.* at 276, 108 S.Ct. 2379, the prison may be the only entity that has evidence of the date of mailing.

■ However, the absence of a prison log detailing when mail was received is not fatal to "constructive filing." For example, it has been deemed adequate that the prisoner placed his or her notice of appeal in a mailbox designated "legal mail." *Caldwell v. Amend*, 30 F.3d 1199, 1202 (9th Cir.1994). An affidavit attesting to the date submitted along with some evidence as to the date tendered on the notice have been held to be sufficient evidence of filing. *See Veteto*, 793 So.2d at 816 (finding prisoner's notation of "Submission date: March 20, 2000" on the notice of appeal and a later filed affidavit attesting that he had given the notice of appeal to a prison official for mailing prior to the deadline sufficient); *Ex parte Williams*, 651 So.2d 569, 570 (Ala.1992) (finding prisoner's statement that he tendered petition of certiorari to prison officials to be mailed within the time prescribed by law for filing and two statements from other persons to this effect filed with the court were sufficient).

■ Where there is no evidence of mailing, appellate courts may remand the case to the trial court for a determination of when the notice was given to the prison authorities by the pro se litigant.[9]

---

9. *But see Rhodes v. Senkowski*, 82 F.Supp.2d 160, 165 (S.D.N.Y.2000), stating that

[a]bsent evidence to the contrary, the Court assumes that [habeas corpus petitioner] gave his petition to prison officials for mailing on the date he signed it, February 9, 1998. *See,*

*e.g., Torres v. Irvin*, 33 F.Supp.2d [257,] 270 [ (S.D.N.Y.1998) ]; *Hunter v. Kuhlman*, [No. 97 Civ. 4692], [1998 WL 182441] (S.D.N.Y. April 17, 1998) [mem.] (deeming petition filed on date on which petitioner signed it); *Hughes v. Irvin*, 967 F.Supp. 775, 778 (E.D.N.Y.1997);

[T]he proper course was to remand to the district court for a determination of whether the notice of appeal was delivered to prison authorities on time. While this procedure may substantially delay review of prisoner petitions, we agree that it is the best course to follow, because even greater deficiencies accompany the two alternatives: A presumption of timeliness would encourage prisoners to fraudulently backdate notices of appeal; a presumption of untimeliness would encourage prison officials, who often are the appellees in these suits, to delay mailing notices of appeal. *Miller v. Sumner,* 872 F.2d 287, 289 (9th Cir.1989); *see also Saffold v. Newland,* 250 F.3d 1262, 1268–69 (9th Cir.2000) (remanding case to district court for a determination of when prisoner delivered petition to state prison authorities for mailing, because prisoner maintained he delivered petition to authorities fourteen days prior to filing stamp), *cert. granted,* —— U.S. ——, 122 S.Ct. 393, 151 L.Ed.2d 297 (2001). Allowing a similar supplementing of the record to resolve the issue of timeliness would not prejudice Defendants in this case, because it relates solely to the timeliness of the appeal and does not address the merits.

## V.

■ In the present case, the "mailbox rule" is particularly applicable to Plaintiff. He has previously filed numerous pro se court documents and mailed them through the prison mailing system. These documents have been marked, apparently routinely, with the date of submission and the initials of the prison official receiving the mail for forwarding. Envelopes attached to documents submitted by Plaintiff during the course of this litigation demonstrate that the time span between tendering envelopes to prison officials and subsequent filing court dates range from a few days [10] to two weeks.[11] In the two times in which Plaintiff has filed a notice of appeal in this case, however, the lapse between the signing of the document and the filing of the document in the court is significant, given the thirty-day appeal period.[12]

Further, there is some additional evidence on the notice that it was timely tendered to prison officials. Plaintiff's signature on the subject notice of appeal was dated Sunday, October 17, 1999, and he contends that on the following day, Monday, October 18, he tendered the envelope to prison officials for mailing. Plaintiff is housed at the Hālawa Correctional Facility. Transmittal on October 18, 1999 would be within the appeal period and would provide adequate time for the mail to arrive at the first circuit court before the deadline of October 22, 1999. Plaintiff's notice of appeal was filed in the first circuit court clerk's office on November 5, 1999, forty-four days after the thirty-day appeal period had begun to run. The envelope in which the notice was transmitted was not attached to the document as was done with many of the other filings.

As to requiring other additional evidence in this case, such as a postmark on the envelope or notation by prison officials, Plaintiff should not be penalized for the absence of a postmarked and initialed envelope, which would prove his filing date. It is probable, based on documents in the court file, that the lack of the envelope was the result of a court clerk's action. *See Da'Ville v. Wise,* 470 F.2d 1364, 1365 (5th Cir.) (refusing to hold notice untimely when the court

*Jones v. Artuz,* [No. 97 Civ. 2394], [1997 WL 876735] (E.D.N.Y. Sept. 13, 1997) [mem.]. *Id.*

**10.** For example, Plaintiff submitted a reply to the Defendants' motion in opposition to Plaintiff's motion for reconsideration. Plaintiff signed the reply on June 29, 1999. The envelope containing the reply is dated by Hālawa prison officials as June 29, 1999, and the postmark on the envelope is dated June 30, 1999. The reply was filed a day later on July 1, 1999.

**11.** Plaintiff filed a motion to postpone a deposition during the discovery phase of the case.

Plaintiff dated the motion January 11, 1999. The envelope is dated by Hālawa prison officials on January 14, 1999 and postmarked January 15, 1999. The motion was not filed, however, until January 28, 1999.

**12.** With respect to the first Notice of Appeal, Plaintiff signed the notice on May 14, 1999, but the notice was not filed until June 10, 1999. The second Notice of Appeal reflects that Plaintiff signed it on October 17, 1999, but the notice was not filed until November 5, 1999.

clerk's practices of forwarding notices on to a larger clerk's office, but "[n]o record is kept of the papers received and forwarded[,]" created a strong possibility that the notice was not stamped when received), *cert. denied,* 414 U.S. 818, 94 S.Ct. 170, 38 L.Ed.2d 50 (1973); *see also United States v. Smith,* 545 F.2d 874, 875–76 (3d Cir.1976) (remanding for a determination of whether a notice of appeal was timely, because although the notice was filed five days after the time for appeal had lapsed, there were indications that the clerk's office had signed for the certified mail containing the notice within the time period). In *Smith,* the court noted that "[o]rdinarily we would assume that the ['filing'] notation would have been entered on the day it was received. Doubt is cast upon this assumption by ... a photocopy of a return receipt for certified mail which shows that something was mailed by [appellant] to the district court on October 29, and received by E.K. Thomson in the district court on October 31[, five days before the notice was filed, and within the time allowed for appeal.]" *Id.* at 876. As far as preventing this possibility in the future is concerned, issuing an order to the circuit court clerk's office requiring the retention of the mailing envelopes may provide additional evidence for future litigants; however, such an order would not address Plaintiff's immediate circumstances.

Plaintiff has litigated his claim primarily through the mail system, because his circumstances leave him no other choice. Inasmuch as Plaintiff lost control over the notice of appeal and the envelope in which he mailed it when he tendered them to prison officials, it would be unfair to place the responsibility of producing the envelope on him. Requiring him to do so would deny Plaintiff meaningful access to the courts. *See Bounds v. Smith,* 430 U.S. 817, 824, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) (prisoners have fundamental constitutional right to adequate, effective, and meaningful access to courts to challenge violations of constitutional rights); *Wolff v. McDonnell,* 418 U.S. 539, 578, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (instructing that access of prisoners to the courts for the purpose of presenting their complaints should not be denied or obstructed); *Johnson v. Avery,* 393 U.S. 483, 485, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969) (prisoners' right of access to courts may not be denied or obstructed).

Accordingly, we temporarily remand this case to the trial court for an evidentiary hearing to supplement the appellate record regarding the timeliness of Plaintiff's tendering of his notice of appeal to Hālawa officials. Plaintiff will be allowed to submit evidence such as that allowed in the cases *supra,* in order to demonstrate that he did tender prison officials his notice of appeal for forwarding to the circuit court within the time specified for appeal under HRAP Rule 4(a). *See, e.g., Hostler v. Groves,* 912 F.2d 1158, 1162 (9th Cir.1990), *cert. denied,* 498 U.S. 1120, 111 S.Ct. 1074, 112 L.Ed.2d 1180 (1991); *Miller,* 872 F.2d at 289. Defendants, of course, shall be allowed the opportunity to refute such evidence as Plaintiff submits.

## VI.

Unlike other envelopes from non-incarcerated litigants, of which the court need only retain the postmark to establish a "filing date," envelopes from incarcerated litigants bear other information, such as the initials of prison officials and the date on which the envelopes were tendered to them. Consequently, courts must retain the entire envelope received from an incarcerated litigant and attach it for filing with the document transmitted. Most correspondence from incarcerated litigants is marked as such and should be readily identifiable.

In accordance with the remand in this case, the clerk of this court shall immediately transmit to the court the lower court record docketed under this appeal. Upon completion of the necessary proceedings and the court entering its findings of fact and conclusions of law, the clerk of the first circuit court shall retransmit to this court the lower court record, as supplemented, on or before June 3, 2002. In all other respects, this court retains jurisdiction of this appeal.

CONCURRING OPINION BY MOON, C.J., WITH WHOM NAKAYAMA J., JOINS.

I concur with both the interpretation of the Hawai'i Rules of Appellate procedure and

with the result reached by the majority. However, given that: (1) no constitutional issues were raised by the parties; (2) there is no controlling federal constitutional authority on point;[1] and (3) "[i]t is axiomatic that appellate courts should pass upon constitutional issues only where the case is such that a decision of such issues is unavoidable," *State v. Kam*, 68 Haw. 631, 635, 726 P.2d 263, 266 (1986), I do not interpret the majority's opinion as deciding any constitutional issues.

---

**1.** The majority cites *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); and *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747 (1969) in support of the proposition that requiring the plaintiff to produce the envelope indicating when he turned his notice of appeal to prison authorities "would deny Plaintiff meaningful access to the courts." Majority Op. at 491, 40 P.3d at 893. I note that these cases, and the quotes cited therefrom, address prisoners' right to adequate legal resources and assistance in preparing habeas corpus and civil rights actions.