**Electronically Filed
Intermediate Court of Appeals
CAAP-20-0000434
20-DEC-2023
07:53 AM
Dkt. 74 OP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI‘I

---o0o---

STACY ROSQUITA, Personal Representative of the Estate of Leland
Keala Olepau, deceased, Appellant-Appellant,
v.
HAWAIIAN HOMES COMMISSION; KALI WATSON, in his capacity as the
Director of the Department of Hawaiian Home Lands and Chair of
the Hawaiian Homes Commission;[1] RANDY AWO, PAULINE NAMU‘O,
ZACHARY HELM, DENNIS NEVES, MICHAEL KALEIKINI, and MAKAI FREITAS,
in their capacities as members of the Hawaiian Homes Commission;
and the DEPARTMENT OF HAWAIIAN HOME LANDS, Appellees-Appellees

NO. CAAP-20-0000434

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NOS. 1CCV-20-0000234 and 1CCV-20-0000411)

DECEMBER 20, 2023

GINOZA, CHIEF JUDGE, LEONARD AND HIRAOKA, JJ.

OPINION OF THE COURT BY HIRAOKA, J.

Leland Keala **Olepau** was a Department of Hawaiian Home

Lands (**DHHL**) lessee. He defaulted on his lease and didn't cure

---

[1] The Hawaiian Homes Commission's current chair and members have been automatically substituted as appellees under Hawai‘i Rules of Appellate Procedure (**HRAP**) Rule 43(c)(1), and are collectively referred to as the Commission.

the default.  The Hawaiian Homes **Commission** cancelled the lease.

Olepau asked the Commission to reconsider.  The Commission

declined.  Olepau filed two appeals with the circuit court.  The

circuit court consolidated the appeals, then dismissed them for

lack of jurisdiction.[2]  Olepau filed this secondary appeal.

We hold that due process requires Rule 303(c)(10)[3] of

the Hawaii Rules of Evidence, Chapter 626, Hawaii Revised

Statutes (**HRE**) be applied to the Commission's mailing under

Hawaii Administrative Rules (**HAR**) § 10-5-35(d).[4]  The

Commission's order cancelling Olepau's lease was served by

regular mail.  Olepau was presumed to have received the order

under HAR § 10-5-35(d) and HRE Rule 303(c)(10).  Olepau presented

---

[2]     The Honorable James H. Ashford presided.

[3]     The rule's text is quoted below.

[4]     HAR § 10-5-35 provides:

> (a)   The commission shall cause to be served all orders, notices, and other papers issued by the commission, together with any other papers required by law to be served by the commission.  Every other paper shall be served by the filing party.

> (b)   All papers served by either the commission or any party shall be served upon all counsel of record at the time of such filing and upon all parties not represented by counsel or upon their designated agents, in fact or by law.  Any counsel entering an appearance subsequent to the initiation of the proceeding shall so notify all other counsel then of record and all parties not represented by counsel.

> (c)   The final order, and any other paper required to be served by the commission upon a party, shall be served upon such party or upon the representative authorized to receive service of such papers, and a copy shall be furnished to all agents designated in fact or by law.

> (d)   ***Service upon parties shall be regarded as complete by mail when deposited in the United States mail properly stamped and addressed***.

(Emphasis added.)

2

evidence sufficient to rebut the presumption. The circuit court should have conducted an evidentiary hearing to decide whether Olepau received the Commission's order in the ordinary course of mail. We also hold that Olepau's appeal from the Commission's denial of his request for reconsideration was timely. We vacate the circuit court's order dismissing Olepau's appeals, and remand for further proceedings.

## I. BACKGROUND

After Olepau defaulted on his lease, the Commission ordered him to make monthly payments to cure his delinquency. He didn't make the payments. The Commission held a contested case hearing on Olepau's default. Olepau didn't attend the hearing. On July 29, 2019, the Commission filed its Findings of Fact, Conclusions of Law and **Decision and Order**. The Decision and Order cancelled Olepau's lease. The certificate of service attached to the Decision and Order stated it was mailed to Olepau at "41-172 Nakini St. Waimānalo, HI 96795[,]" by first-class mail on July 29, 2019.

Olepau petitioned the Commission for reconsideration on January 23, 2020. On February 12, 2020 (before the Commission ruled on the petition for reconsideration), Olepau filed an appeal from the Decision and Order, creating Judiciary Information Management System (**JIMS**) no. 1CCV-20-0000234 (the **First Appeal**).

By **Letter** dated February 13, 2020, the Commission informed Olepau it had no jurisdiction over his petition for

reconsideration because he didn't ask for reconsideration within ten days of the Commission's Decision and Order.  On March 12, 2020, Olepau filed an appeal from the Letter, creating JIMS no. 1CCV-20-0000411 (the **Second Appeal**).

The Commission and DHHL moved to dismiss the First Appeal and the Second Appeal.  The motions were substantially identical; they argued that the circuit court lacked subject-matter jurisdiction because Olepau's notices of appeal were untimely.  The court consolidated the appeals.  The court entered the "Order Granting (1) Appellees' Motion to Dismiss Appeal Filed February 28, 2020 and (2) Appellees' Motion to Dismiss Appeal Filed April 3, 2020" (**Order Dismissing Appeals**) on June 3, 2020.  Olepau filed this secondary appeal.[5]

## II. STANDARD OF REVIEW

"The existence of jurisdiction is a question of law that we review de novo under the right/wrong standard."  In re Kanahele, 152 Hawaiʻi 501, 509, 526 P.3d 478, 486 (2023).

## III. DISCUSSION

Olepau raises four points of error.  Three allege the Commission made substantive and procedural errors; the circuit court didn't address them because it dismissed Olepau's appeals for lack of jurisdiction.  We address only Olepau's fourth point — that the circuit court erred by dismissing his appeals.

---

[5]     Olepau died on December 12, 2022.  Stacy Rosquita, the personal representative of Olepau's estate, was substituted for Olepau under HRAP Rule 43(a).

4

### A.   The circuit court erred by summarily dismissing the First Appeal.

Hawaii Revised Statutes (**HRS**) Chapter 91 governs the right to appeal from an administrative agency's decision. Strict compliance with those provisions is required; "the timely filing of a notice of appeal is fundamental to the court's jurisdiction to review an agency's decision." Korean Buddhist Dae Won Sa Temple of Haw., Inc. v. Zoning Bd. of Appeals, 9 Haw. App. 298, 303, 837 P.2d 311, 313 (1992), overruled in part on other grounds, Rivera v. Dep't of Lab. & Indus. Rels., 100 Hawaiʻi 348, 352 n.7, 60 P.3d 298, 302 n.7 (2002).

HRS § 91-14 (Supp. 2019) provides:

> (b)   Except as otherwise provided herein, proceedings for review shall be instituted in the circuit court . . . within thirty days after service of the certified copy of the final decision and order of the agency pursuant to rule of court[.]

When the Commission's Decision and Order was filed, HAR § 10-5-35(d) stated: "Service upon parties shall be regarded as complete by mail when deposited in the United States mail properly stamped and addressed." The Commission's Decision and Order was filed on July 29, 2019. The certificate of service was signed by the Commission's Secretary. It certified that the Decision and Order was sent to Olepau on July 29, 2019, by "USPS First-Class Mail."

The Hawaiʻi Rules of Civil Procedure (**HRCP**) apply to appeals under HRS § 91-14. Rivera, 100 Hawaiʻi at 349, 60 P.3d at 299. "When service is by mail . . . HRCP Rule 6(e) operates

to provide the parties two additional days to file a notice of appeal[.]" Id. Thus, the deadline for Olepau to appeal from the Decision and Order was Friday, August 30, 2019. The First Appeal (from the Decision and Order) wasn't filed until February 12, 2020, after the deadline.

Olepau argues that his appeal was timely because he didn't receive the Decision and Order until January 13, 2020, and his appeal was filed within thirty days of that date. He offered a declaration stating that he was handed an envelope on January 13, 2020, that contained a copy of an "order cancelling my lease" that he had never seen before. The declaration stated:

> 34. In late December 2019, [my calabash[6] nephew] and I went to the DHHL Kapolei office to make payments on my loan. I was told by staff that they were not going to accept my payment because there was an issue with my lease. They referred me to David Hoke for more information.
>
> 35. Because I was worried about my lease and could appreciate how important it is, I immediately made several attempts to reach Mr. Hoke. He called me back and told me that the DHHL was not accepting my payment because my lease was canceled in July 2019.
>
> 36. These conversations were the first I heard of my lease being canceled.
>
> 37. With the help of [my calabash nephew], I called Grace Lee at the [Native Hawaiian Legal Corporation], who suggested that I get a copy of any notice of the cancellation of my lease.
>
> 38. On January 13, 2020, I saw several individuals, parked across the street by my neighbor's house at 41-171 Nakini St., Waimānalo, Hawaiʻi. It looked like they were looking for someone.
>
> 39. They then came over to my house to speak to me.
>
> 40. On that day, Kip Akana of the DHHL handed me an envelope containing a copy of the July 29, 2019 order cancelling my lease and notice that I had ten days to ask

---

[6] "Calabash" is a colloquial term referring to a non-blood-relative who is treated as a family member.

for reconsideration of the cancellation.

41. I had never seen any copy of this paperwork before.

42. On the envelope for that paperwork addressed to me, I noticed that there was the wrong address, 41-289 Nakini st. [sic], on the envelope. That address was scratched out, and another wrong address, "171," was handwritten in.

43. Attached hereto as Exhibit "A" is a copy of the front of the envelope Mr. Akana handed to me on January 13, 2020.

44. I know that I never received this paperwork before. This must mean that either it was not sent to me or someone stole my mail.

The copy of the envelope attached to the declaration was not postmarked. The return address was for DHHL's Enforcement Section, not the Commission. The envelope's purported contents were not attached to the declaration.

**1. The "prisoner mailbox rule" does not apply.**

Olepau cites <u>Setala v. J.C. Penney Co.</u>, 97 Hawaiʻi 484, 40 P.3d 886 (2002) and argues that the "mailbox rule" applies. <u>Setala</u> recognized the *prisoner* mailbox rule. Under the prisoner mailbox rule, a self-represented prisoner's notice of appeal "is deemed 'filed' . . . on the day it is tendered to prison officials[.]" <u>Id.</u> at 485, 40 P.3d at 887; <u>see also</u> <u>Fagaragan v. State</u>, 132 Hawaiʻi 224, 237, 320 P.3d 889, 902 (2014) (explaining rationale for the rule). The prisoner mailbox rule has nothing to do with a person's receipt of an agency order served by mail, and does not apply to Olepau's notices of appeal.

## 2.     HRS Chapter 91 applies to the Commission.

Olepau argues that the service provisions of HAR § 10-5-35, HRS § 91-14, and HRCP Rule 5(b)(3)[7] don't apply to the Commission, because they "conflict with [the Commission's] trust obligations to keep its beneficiaries informed regarding facts affecting their interests."  Olepau's argument contradicts Hawaiʻi Supreme Court precedent.

> [HRS Chapter 91] was adopted to "provide a uniform administrative procedure for all state and county boards, commissions, departments or offices which would encompass the procedure of rule making and adjudication of contested cases."  Hse.Stand.Comm.Rep. No. 8, in 1961 House Journal, at 653.  Because the Commission's administrative powers are articulated through the rules and regulations of [Hawaiʻi Administrative Rules] "in accordance with HRS chapter 91[,]" (1 Haw.Rev.Stat. 39, 63 (1992 Supp.) (HHCA, 1920, § 222), [sic] the Commission is a state agency that must conform to the requirements of [HRS Chapter 91] when acting in the adjudication of a contested case.

Bush v. Hawaiian Homes Comm'n, 76 Hawaiʻi 128, 133, 870 P.2d 1272, 1277 (1994) (some citations omitted).

HAR § 10-5-35 specifically applies to the Commission.

## 3.     The HAR § 10-5-35 provision that service is complete upon mailing must be rebuttable when the document mailed affects the recipient's constitutionally protected property right.

Olepau argues that HAR § 10-5-35's provision that service is complete upon mailing must be rebuttable to avoid violating his constitutional right to due process.  His argument has merit.  He had a constitutionally protected property right in his DHHL lease.  Cf. Aged Hawaiians v. Hawaiian Homes Comm'n, 78

---

[7]     HRCP Rule 5 does not apply to proceedings before administrative agencies.

Hawai'i 192, 211, 891 P.2d 279, 298 (1995) (holding that qualified Hawaiian Homes Commission Act beneficiaries on homestead waiting lists had valid property interest in homestead awards).  The Fifth Amendment to the United States Constitution provides:

> No person shall be . . . deprived of life, liberty, or property, without due process of law[.]

The Fourteenth Amendment to the United States Constitution provides:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law[.]

Article I, section 5 of the Hawai'i Constitution provides:

> No person shall be deprived of life, liberty or property without due process of law[.]

In War Eagle Vill. Apartments v. Plummer, 775 N.W.2d 714 (Iowa 2009), Plummer was a tenant at War Eagle Village.  She became delinquent in rent.  War Eagle Village filed a summary possession action.  It served Plummer by certified mail, as allowed by Iowa statute.  Plummer didn't appear at the hearing, which took place seven days after the mailing.  She was defaulted and ordered to vacate the premises.  She received the notice two days after the hearing, when she retrieved the certified letter

from the post office. But the statute stated that "notice is received" by the tenant when it is "mailed by certified mail . . . whether or not the tenant signs a receipt for the notice[.]" Id. at 718. Plummer appealed. Of the statute, the Iowa Supreme Court stated: "Dropping a letter in a mailbox is not notice, yet is deemed sufficient notice. It is mere lip service to meaningful notice." Id. at 721. The court held that the Iowa statute, as applied in Plummer's case, violated the Iowa Constitution's due process clause.[8] Id.

Other courts have also held that irrebuttable or conclusive presumptions that a mailed document is received by the addressee violate due process requirements. See, e.g., United States v. Bowen, 414 F.2d 1268, 1273 (3d Cir. 1969) (holding the presumption that conscientious objector form mailed to draft inductee was received violates Fifth Amendment due process clause "insofar as it purports to establish such an irrebuttable presumption"); Solberg v. Sec'y of Health & Hum. Servs., 583 F. Supp. 1095, 1097 (E.D. Wis. 1984) (holding the conclusive presumption that mailed notice of termination of disability benefits was received violates due process clause, but rebuttable presumption that shifts burden of presenting credible evidence of non-receipt to challenging party is constitutional); State ex rel. Flores v. State, 516 N.W.2d 362, 370 (Wis. 1994) (holding the presumption of receipt upon mailing of information packet

_____

[8] The Iowa Constitution's due process clause states that "no person shall be deprived of life, liberty, or property, without due process of law." Plummer, 775 N.W.2d at 719 (quoting Iowa Const. art. I, § 9).

about criminal defendant's appeal rights may not be given conclusive effect without violating Fourteenth Amendment due process clause).

The Decision and Order in this case did not simply provide information; it had substantive and procedural effects on Olepau's property right — it cancelled his lease and it fixed the time within which he could request reconsideration of, or appeal from, the cancellation.  Under those circumstances, due process requires that HRE Rule 303(c)(10), HRS § 626-1 (2016) be applied to the Commission's mailing.

HRE Rule 303 (2016) provides:

> (a)   General rule.  A presumption established to implement no public policy other than to facilitate the determination of the particular action in which the presumption is applied imposes on the party against whom it is directed the burden of producing evidence.
>
> (b)   Effect.  The effect of a presumption imposing the burden of producing evidence is to require the trier of fact to assume the existence of the presumed fact **unless and until evidence is introduced which would support a finding of its nonexistence**, in which case no instruction on presumption shall be given and the trier of fact shall determine the existence or nonexistence of the presumed fact from the evidence and without regard to the presumption. Nothing in this rule shall be construed to prevent the drawing of any inferences.
>
> (c)   Presumptions.  The following presumptions . . . are presumptions imposing the burden of producing evidence:
>
> . . . .
>
> (10)  Letter properly addressed and mailed.  A letter correctly addressed and properly mailed is presumed to have been received in the ordinary course of mail[.]

(Emphasis added.)

The Commission's certificate of service stated that the Decision and Order was mailed, properly addressed, to Olepau on

11

July 29, 2019. Under HAR § 10-5-35(d) and HRE Rule 303(c)(10), Olepau is presumed to have received the Decision and Order in the ordinary course of mail.[9] Olepau had the burden of rebutting the presumption. He did more than just submit a declaration denying receipt.[10] His declaration (quoted above) provided a copy of an envelope with the DHHL Enforcement Section's return address, and a detailed account of when and how he says he first received "a copy of the July 29, 2019 order cancelling my lease." We hold, under these circumstances, that Olepau produced evidence sufficient to rebut the HAR § 10-5-35(d) and HRE Rule 303(c)(10) presumption of receipt.

> **4. The circuit court must decide whether Olepau received the Commission's Decision and Order in the ordinary course of mail.**

We next consider the effect of Olepau's rebuttal. HRE Rule 301 (2016) provides these definitions:

> (3) "Burden of producing evidence" means the obligation of a party to introduce evidence of the existence or nonexistence of a relevant fact sufficient to avoid an adverse peremptory finding on that fact.
>
> (4) "Burden of proof" means the obligation of a party to establish by evidence a requisite degree of belief concerning a relevant fact in the mind of the trier of fact. The burden of proof may require a party to establish the existence or nonexistence of a fact by a

---

[9] The Commission's form of certificate of service included an option for service by "Certified Mail, Return Receipt Requested[.]" We express no opinion about whether, or how, HRE Rule 303 would apply had the Decision and Order been mailed to Olepau in that manner.

[10] We express no opinion about whether submission of a declaration simply denying receipt would be sufficient to rebut the presumption. See Solberg, 583 F. Supp. at 1098 (self-serving allegations of plaintiff and her father were not sufficient to overcome presumption that properly mailed letter had been duly delivered to plaintiff).

> preponderance of the evidence or by clear and
> convincing proof.

The HRE Rule 303(c)(10) presumption imposes a burden of producing evidence.  As described by Professor Bowman:

> The effect of each of the burden of production presumptions of rule 303 is to require a finding of the presumed fact unless "evidence is introduced which would support a finding of its nonexistence," in which event the presumption vanishes and the factfinder decides the matter as it would any other contested fact issue.  As described in the commentary to rule 302, this is the "bursting bubble." The contradictory evidence that dispels the presumption can be direct or circumstantial, but it must be sufficient to support a determination of the nonexistence of the presumed fact.

A. Bowman, Hawaii Rules of Evidence Manual, § 303-1[2], at 3-12 (2022-2023 ed.) (LexisNexis).

The official commentary to HRE Rule 302 states:

> Disagreement over the nature, scope, and effect of legal presumptions has gone on for decades.  The position most widely adopted in American jurisdictions is the Thayer view, sometimes termed the "bursting bubble" theory, McCormick §[ ]345.  The sole effect of a legal presumption, in this view, is to impose upon the party against whom it is directed the requirement of producing evidence adequate to sustain a finding of its nonexistence.  If this requirement is met, the presumption disappears.  See W. Thayer, Preliminary Treatise on Evidence, 313-352 (1898).  This theory is endorsed by Wigmore, see 9 J. Wigmore, A Treatise on the Anglo-American System of Evidence in Trials at Common Law §[ ]2491(2) (3d ed. 1940), with slight modifications, id. at §[ ]2498a, and is reflected in Fed. R. Evid. 301.

(Bracketed material omitted.)

The current reference to the "bursting bubble" from McCormick on Evidence is:

> [U]nder what has become known as the Thayer or "bursting bubble" theory, the only effect of a presumption is to shift the burden of producing evidence with regard to the presumed fact.  If that evidence is produced by the adversary, the presumption is spent and disappears.

2 Kenneth S. Broun et al., <u>McCormick on Evidence</u> § 344 (8th ed. 2020, July 2022 Update).

Once Olepau submitted evidence sufficient to rebut the presumption of receipt, the circuit court had to decide by a preponderance of evidence whether Olepau actually received the Decision and Order in the ordinary course of mail.  We remand to the circuit court to determine, by evidentiary hearing under HRS § 91-14(f) (Supp. 2019), whether Olepau received the Commission's Decision and Order in the ordinary course of mail, and for entry of findings of fact and conclusions of law under HRCP Rule 52(a).  If the circuit court finds that Olepau first received the Decision and Order on January 13, 2020 (as he claimed), the First Appeal would be timely.  <u>See</u> HRS § 91-14(b).

> **B.    The circuit court erred by dismissing the Second Appeal.**

The Second Appeal requires a different analysis. Olepau appealed from the Commission's February 13, 2020 Letter denying his petition for reconsideration.  His notice of appeal was filed on March 12, 2020, within 30 days after the Commission's Letter was mailed.  Thus, the Second Appeal was filed within the time required by HRS § 91-14(b).  The circuit court erred by dismissing the Second Appeal for lack of jurisdiction.

## IV. CONCLUSION

For these reasons, we vacate the circuit court's "Order Granting (1) Appellees' Motion to Dismiss Appeal Filed

14

February 28, 2020 and (2) Appellees' Motion to Dismiss Appeal Filed April 3, 2020" entered on June 3, 2020, and remand for further proceedings.

On the briefs:

David Kauila Kopper,
Hailialoha Hopkins,
for Appellant-Appellant.

Craig Y. Iha,
Ryan K. P. Kanakaole,
Deputy Attorneys General,
State of Hawaiʻi,
for Appellees-Appellees.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Keith K. Hiraoka
Associate Judge