Filed 9/26/16  P. v. Alonzo CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JAIME JOSHUA ALONZO,<br><br>Defendant and Appellant. | F068960<br><br>(Super. Ct. No. VCF263142)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Brett D. Alldredge, Judge.

Jake Stebner, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

A jury found appellant Jaime Joshua Alonzo, a convicted felon, guilty of possessing both a firearm (Pen. Code, § 12021, subd. (a)(1);[1] count 1) and ammunition (§ 12316, subd. (b)(1); count 2). In a bifurcated court trial, he admitted a prior serious felony that resulted in a prison sentence. He received an aggregate prison term of five years.

On appeal, appellant contends the trial court abused its discretion in denying a motion for a new trial, and the parties dispute whether this appeal is timely. We need not resolve the parties' dispute because, if this appeal was untimely, any delay stemmed from confusion caused by the trial court. Accordingly, we will review the claim, and we find merit to appellant's issue. In denying the motion, the trial court expressed some doubt it would have found appellant guilty. Although the trial court stated it felt the jury had sufficient evidence to reach its verdicts, the trial court failed to conduct its required independent review of the evidence.

We remand this matter for the trial court to conduct a new hearing regarding the motion for a new trial.

## FACTUAL BACKGROUND

### I. Prosecution's Evidence.

On November 22, 2011, a Visalia police officer stopped appellant for a traffic violation. Appellant indicated he was on parole, and he was eventually arrested. He informed the officer he was living with his mother, but admitted he also had a key for his girlfriend's residence.

The officer took appellant to his mother's residence. The officer testified that appellant's mother told him a front bedroom belonged to appellant's brother. After examining several rooms, the officer believed appellant did not reside there. The officer

---

[1] All future statutory references are to the Penal Code unless otherwise noted.

2.

transported appellant to his girlfriend's residence. The officer described appellant as nervous when informed they were going to his girlfriend's residence for a search.

The officer spoke with appellant's girlfriend, Nancy Rodriguez, at her residence. In a bedroom, he noticed a lot of men's clothing, including shirts and four boxes of men's shoes. There were three hampers in the bedroom, and men's clothing in some of the hampers. Appellant's California identification card was found in one of the hampers, and the officer seized a loaded .9-millimeter Smith and Wesson handgun located in a closet in that room. The gun was underneath a stack of several T-shirts and a pair of khaki shorts, and next to a Cincinnati Reds hat. The officer found that significant because, at the time of the traffic stop, appellant was wearing a black Cincinnati hat. The two hats were similar in design but different in color.

Later in the officer's presence, appellant told Rodriguez he was "sorry" and he was going back to prison for about a year.

Rodriguez told the officer only she and appellant resided there. Appellant later admitted to the officer he spent about half of his time at Rodriguez's residence, and the clothing in that bedroom belonged to him. Appellant, however, denied any knowledge of the gun. Rodriguez told the officer the gun was not hers and only appellant could have put it in that room.

The recovered gun was later processed for fingerprints. No fingerprints were found on it. The parties stipulated appellant was previously convicted of a felony.

## II. Defense Evidence.

### A. Testimony from appellant's mother.

Appellant's mother testified appellant lived with her in November 2011, occupying the front bedroom in her home. She claimed appellant had clothes and shoes in that room, along with personal items such as pictures and letters. She denied ever informing the officer that appellant's brother resided in that room, claiming his two brothers never lived with her at that residence. She said she informed the officer that the

3.

front bedroom was appellant's.  On cross-examination, she said appellant stayed at his girlfriend's house once or twice a week.

**B.      Testimony from Nancy Rodriguez.**

Rodriguez did not know how the handgun got into her residence.  She had never seen the gun before, and she had never seen appellant with it.  She denied that appellant ever told her he brought a gun into her residence.  She said her cousin, Isaac Fierro, stayed with her periodically in 2011, mostly sleeping on the couch, and he kept clothing in her residence.  She claimed the Cincinnati Reds hat found near the gun was hers and not appellant's.  She said the clothes found near the gun were maybe Fierro's or hers, or "extra clothes."  She said the gun was located in a spare bedroom and not in her bedroom.

On cross-examination, she admitted appellant stayed with her "a couple of nights" at her residence, but he did not live there.  Fierro would "sometimes" spend the night, too, but Rodriguez did not keep track of him.  She admitted it was possible that some of the clothes found in her residence belonged to appellant, but believed they were more Fierro's.  She said appellant slept in her bedroom, which was separate from where the gun was discovered.  She admitted not telling the officer about Fierro.

**C.      Testimony from Isaac Fierro.**

Fierro said he stayed at Rodriguez's apartment about 25 percent of the time, keeping personal items there.  He claimed the gun was his, and he placed it in her residence the day before the officer found it.  He never told Rodriguez or appellant about the gun.

Fierro said he bought the gun from somebody but could not remember from where.  Before viewing exhibit photos of the gun, Fierro described it as a .9-millimeter that was primarily either black or silver, but he could not remember.  He could not remember the gun's model.

On cross-examination, Fierro said he stayed at Rodriguez's residence "maybe one night a month" but he was not sure.  He admitted he could not recall what the gun looked

4.

like because he had just purchased it before placing it in her residence. He admitted he was not sure if this was the same gun he had purchased, but said it looked "something like it." He admitted he had been convicted of a felony.

### D. Testimony from appellant.

Appellant denied any knowledge of the gun found in Rodriguez's house. He claimed to have never seen that gun before and had no involvement in its placement in her closet.

On cross-examination, appellant admitted he stayed at Rodriguez's residence a "couple of days out of the week." He was sure he had clothes there but they were in Rodriguez's bedroom and not in the room where the gun was found. He agreed the officer found his identification card in her residence. He denied telling the officer that the clothes in the other bedroom belonged to him.

## III. Rebuttal Evidence.

The officer denied that appellant's mother told him the front bedroom belonged to appellant, stating she told him it belonged to appellant's brother. He walked through that area and he did not see anything indicating it was appellant's room.

The officer disputed some of Rodriguez's testimony, claiming she told him she occupied the bedroom with appellant where the gun was located. She said the clothing in that room belonged to appellant. She told the officer she did not know the gun was there and she denied anyone other than appellant could have put it there. At no time did Fierro contact the police department to take ownership of the gun.

## DISCUSSION

## I. The Present Appeal Will Not Be Dismissed As Untimely.

Respondent argues the present appeal should be dismissed, claiming appellant's notice of appeal was untimely.

5.

### A.    Background.

On December 20, 2013, the parties met in open court for sentencing following the jury's verdicts. Before imposing sentence, the court dealt with several defense motions, including a motion for a new trial, which is discussed below in section II. Prior to imposing sentence, the court determined defense counsel had raised unusual issues about whether appellant had a right to another hearing pursuant to section 1538.5. The trial court invited defense counsel to "request a stay in [appellant's] sentence" in order to obtain appellate review. The trial court decided not to remand appellant into custody that day, but indicated its intent to impose sentence that day because sentencing had been continued at least two times before. The trial court orally pronounced judgment.

Following imposition of judgment, the court again indicated its intent to give appellant an opportunity to file an application with the appellate court regarding his right to hold another hearing pursuant to section 1538.5. The court stated it would not remand appellant to serve his sentence until that occurred. The prosecutor objected. After hearing oral argument, the trial court stated it would allow appellant "60 days to remand" in order for the defense to file a writ. Appellant was ordered back to court on February 21, 2014. Defense counsel indicated confusion, stating he thought a stay would occur in order for an appeal to be filed. The trial court said the intent was to keep appellant out of custody if a "writable issue of some kind" existed that would support an immediate intervention by the appellate court. Defense counsel expressed concern that no writable issue existed because appellant had been sentenced, which would require an appeal. The trial court stated it did not know which procedure the defense wanted to follow.

Defense counsel requested a stay of appellant's remand until an appeal was decided. The trial court denied that request. At the conclusion of the hearing, the trial court stated it found "good cause not to exonerate [appellant's] bond. I am not going to release him on his own recognizance. Normally at the time of sentencing I would do so. He remains on your bond to return for sentencing on that date."

On February 21, 2014, the parties met in open court and defense counsel noted sentence had been stayed until that day, but the court stated, "I think we sentenced him. We stayed remand until today." The court noted it had wanted to give the defense an opportunity to make an application, if one existed, to the appellate court for a possible stay. The court did not see a stay in the file. The court indicated its intent to remand appellant that day.

Defense counsel stated he believed the court stayed sentence until February 21, 2014, even though the court "went through the whole hearing." Defense counsel said an appeal had been filed earlier that day over a belief the statutory period to file one would start running that same day. Defense counsel said he had looked into filing a writ but believed it was not appropriate because the trial court went through formal sentencing.

The trial court stated it would take "full responsibility for any confusion that happened in this case." The court said it was the intent to allow appellant to be free of custody to see if any available options existed. After hearing additional comments from counsel, the court ordered appellant into custody to serve the sentence.

Appellant's appeal was filed February 21, 2014. The original abstract of judgment was filed February 27, 2014, and an amended abstract of judgment was filed June 19, 2014.

### B.    Standard of review.

A notice of appeal "must be filed within 60 days after the rendition of the judgment or the making of the order being appealed." (Cal. Rules of Court, rule 8.308(a).) "In a criminal case, judgment is rendered when the trial court orally pronounces sentence. [Citations.]" (*People v. Karaman* (1992) 4 Cal.4th 335, 344, fn. 9.) An appellate court is without jurisdiction to determine the merits of an appeal, and must dismiss the appeal if it is not actually or constructively filed within the appropriate filing period. (*In re Jordan* (1992) 4 Cal.4th 116, 121.)

**C.  Analysis.**

The parties dispute whether the hearing on February 21, 2014, extended appellant's statutory deadline to file the present appeal.  They also dispute whether the doctrine of constructive filing applies, i.e., where an incarcerated prisoner relies in good faith, and through no fault of his own, that prison officials or his counsel have filed an appeal on his behalf.  (*People v. Lyons* (2009) 178 Cal.App.4th 1355, 1361.)  We need not, however, resolve these disputes.

If appellant's appeal was untimely, a conclusion we do not reach, the delay in filing the appeal was due to defense counsel's stated confusion.  A criminal defendant has the right to effective assistance of counsel.  (*People v. Ledesma* (1987) 43 Cal.3d 171, 215.)  To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient; that is, it fell below an objective standard of reasonableness.  (*Id.* at p. 216.)  In addition, the defendant must also establish prejudice.  (*Id.* at p. 217.)  When counsel's constitutionally deficient performance deprives a defendant of an appeal he otherwise would have taken, a successful ineffective assistance of counsel claim has been made, entitling the defendant to an appeal.  (*Roe v. Flores-Ortega* (2000) 528 U.S. 470, 483; see also *People v. Byron* (2009) 170 Cal.App.4th 657, 666-667 [untimely appeal treated as petition for writ of habeas corpus in interests of judicial economy due to possible viable ineffective assistance of counsel claim].)

Here, appellant's defense counsel indicated on February 21, 2014, he believed sentence had been stayed and he filed an appeal that day.  The trial court stated it would take "full responsibility for any confusion that happened in this case."

This record demonstrates why appellant's counsel filed the appeal on February 21, 2014.  Under the circumstances, we understand why confusion occurred.  Nevertheless, if appellant's appeal was untimely, his Sixth Amendment right to effective assistance of counsel was implicated, and he suffered prejudice.  Thus, we will review the appeal.

## II.   A New Hearing Is Required Regarding The Motion For A New Trial.

Appellant contends the trial court's judgment and order denying his motion for a new trial should be vacated. He asserts the court "abused its discretion in declining to independently review all of the evidence and determine whether, in its opinion, there was sufficient credible evidence to prove the charges beyond a reasonable doubt."

### A.   Background.

After trial, appellant moved for a new trial or, in the alternative, a dismissal for lack of sufficient evidence. At the hearing, the trial court indicated it had read everything which the defense had submitted. The court stated it would give a tentative ruling and then allow argument. The following was stated:

"THE COURT: [¶] … [¶] On the issue relating to the insufficiency of evidence argument I will say at the beginning of this hearing that I didn't believe after listening to the evidence that the People had the strongest of evidence in this case. I thought that it was as likely or not that the jury may or may not either convict or acquit [appellant] on the facts depending upon how they saw the evidence and whether they came back with a verdict of guilty or not guilty would not have surprised me. But even if I were to go so far as to say that if I heard the evidence I may not have agreed with the jury verdict.

"Number 1, that is absolutely irrelevant and 2, it is [nowhere] near the finding that I would have to make that the jury did not have sufficient evidence within which to come back with that verdict.

"The People had, the jury considered not only the People's evidence, they also heard from a witness called by the defense whose name escapes me. It was the gentleman who was the cousin or some relative of [appellant's] girlfriend.

"[DEFENSE COUNSEL]: Isaac was his first name.

"THE COURT: Isaac. And quite frankly, the motion made on insufficiency of the evidence is simply an argument made that the jury didn't believe the witnesses and I think an unavoidable conclusion is that they sat and listened to Isaac and didn't believe a single thing that he said. And that testimony in addition to the evidence that was presented by the People certainly gave the jury a basis to come back with a verdict. And if

9.

there is anything that is sacrosanct in terms of what is in the exclusive purview of the jury is their ability to weigh the credibility of the witnesses and they did. Obviously.

"And they felt that after doing so there was proof beyond a reasonable doubt, they reached that decision [unanimously] and while I understand [appellant's] complaint if you will that the jury didn't believe his side of the story that is why we have jury trials and I can't take that away at this point.

"If I felt there was no evidence to support the verdict it would be my obligation to do so but I am not prepared to do so in this case, especially given the particular witnesses that they heard from and the proof that the People put forward. So that is the tentative on that. I'm going to allow brief argument and then I am going to move onto the next [issue].

"[Defense counsel.]

"[DEFENSE COUNSEL]: Okay, here is what, back in my original motion, Your Honor, the law that I laid out and I am sure the court is very well aware of this law that on a motion for a new trial, you know, the judge is supposed to review everything with its own independent judgment. Some cases and I don't think that this is the current state of the law but older cases used to refer to it as the judge acting as the 13th juror.

"THE COURT: But that has been specifically discounted.

"[DEFENSE COUNSEL]: But I understand that, but I think the concept is still the same.

"THE COURT: That is why I commented to you, I may have seen this somewhat differently, okay?

"[DEFENSE COUNSEL]: I understand. And that is why I say looking at your independent judgment. And here is what I want to point out in terms of what the evidence showed in this case and this is what I really think weighs heavily on this case. Is that the evidence and so, let me just read to you a little bit from the motion a little bit just to remind the court.

"THE COURT: No, I remember this case clearly. The evidence showed and we will get, I want to ignore for now all the actions that took place before the police got there because that is the basis of your other motion. The evidence shows they found the gun. The girlfriend said absolutely it is not mine, okay? Isaac comes in and testifies it is entirely

10.

mine. I go there 3 times a week. It is my gun. It is all that. And they say, the jury obviously doesn't believe that testimony.

"The prosecution puts on the evidence that ties [appellant's] clothing, his hat, otherwise to that area and finds a sufficient basis to convince all 12 of them beyond a reasonable doubt that it was his gun.

"[DEFENSE COUNSEL]: Okay. That is --

"THE COURT: And you are just saying that is not the way it went down.

"[DEFENSE COUNSEL]: The evidence did not show that any of the clothing there was Isaac's.

"THE COURT: Not Isaac's.

"[DEFENSE COUNSEL]: I mean, excuse me, [appellant's], they are assuming it was [appellant's] just because it was male clothing. So I think the evidence was insufficient to show that any of the clothing that was in Nancy's bedroom was [appellant's], there was no evidence. That wasn't presented.

"THE COURT: But there was evidence to show that he lived there.

"[DEFENSE COUNSEL]: No. That was the only thing I want to point out.

"THE COURT: He stayed there.

"[DEFENSE COUNSEL]: No, there was no evidence presented to the jury that [appellant] was there at any time that the gun was there. That is my point. There was no evidence presented that said he stayed there. Let's say this happened on Wednesday, that he stayed there Tuesday night, that he stayed there Monday night, that he stayed there Sunday night. There was no evidence of that. There was no evidence of the last time he was at Nancy's house. There was not a single stitch of evidence presented to the jury the last time he was there. So there was no evidence presented to this jury that he was there at any time after that gun was placed there.

"And you know, to say that that gun is his, I just think is an abomination, just an abomination. I mean I was absolutely flabbergasted with the jury verdict.

"THE COURT: I believe you were.

11.

"[DEFENSE COUNSEL]: I was because the jury came back very fast and it has been my experience in 25 years as a defense lawyer that if you get a fast verdict it is usually a defense verdict. I just had one last week in Porterville, I mean the jury was out literally 20 minutes.

"THE COURT: I have had them come back quicker in different cases.

"[Prosecutor], do you wish to respond to [defense counsel's] written argument or his statements on the insufficiency of the evidence to support the jury verdict?

"[THE PROSECUTOR]: Your Honor, I think our motion addresses that. I know we have a lot of motions to cover so I am going to keep it brief. I felt that the jury completely did not believe anything Isaac said. His credibility on the stand as you probably recall was not the best. Even on cross he admitted that he couldn't even be sure if that was his gun. He had to kind of be shown the pictures or peek at the pictures before he was shown those exhibits to even describe what kind of gun he had and the jury saw that and so the People believe that the evidence that was there was sufficient, all the witnesses presented by the defense were not credible and that the jury found the verdict that was appropriate.

"[DEFENSE COUNSEL]: Like I said I don't think it is an appropriate verdict based on what the state of the evidence was.

"THE COURT: Based upon the written briefs in this case, the evidence that the court recalls and considered, the arguments of counsel, the motion for a dismissal or new trial on that grounds is denied."

## B. Standard of review.

"On a motion for a new trial, a trial court must review the evidence independently, considering the proper weight to be afforded to the evidence and then deciding whether there is sufficient credible evidence to support the verdict. [Citation.] 'A trial court's ruling on a motion for new trial is so completely within that court's discretion that a reviewing court will not disturb the ruling absent a manifest and unmistakable abuse of that discretion. [Citation.]' [Citation.]" (*People v. Lewis* (2001) 26 Cal.4th 334, 364.)

### C. Analysis.

Appellant asserts the trial court abused its discretion when it concluded this case hinged on witness credibility but then did not independently exercise its own judgment. Appellant points to the court's statements that the People did not have a strong case, it may not have agreed with the jury verdict, and it is "sacrosanct" and is in the jurors' "exclusive purview" to decide witness credibility. He contends the judgment should be vacated, primarily relying on *People v. Robarge* (1953) 41 Cal.2d 628 (*Robarge*).

Respondent cites *People v. Davis* (1995) 10 Cal.4th 463 (*Davis*) and *People v. Fuiava* (2012) 53 Cal.4th 622 (*Fuiava*) in arguing the trial court did not abuse its discretion in denying the motion. Respondent contends the trial court's statements were "far from the showing that would have to be made to order a new trial." Even if the court was under a "misimpression" regarding the standard of review, respondent asserts it is not reasonably probable a rehearing would change the outcome. We find appellant's contentions persuasive and reject respondent's arguments.

A trial court is authorized to grant a new trial when the verdict "is contrary to law or evidence." (§ 1181, subd. (6).) In *Porter v. Superior Court* (2009) 47 Cal.4th 125, our Supreme Court explained the trial court's role when ruling on a motion for new trial under section 1181, subdivision 6. The judge is not to extend any evidentiary deference. (*Porter v. Superior Court, supra,* at p. 133.) The judge must independently examine "all the evidence to determine whether it is sufficient to prove each required element beyond a reasonable doubt *to the judge*, who sits, in effect, as a '13th juror.' [Citations.]" (*Ibid.*, original italics.) The court may rule that the jury's verdict is contrary to the evidence if it is not convinced that the charges have been proved beyond a reasonable doubt. "In doing so, the judge acts as a 13th juror who is a 'holdout' for acquittal." (*Ibid.*)

In its independent assessment of the evidence, the trial court is guided by a presumption in favor of the correctness of the verdict and the proceedings in its support. (*Fuiava, supra,* 53 Cal.4th at p. 729.) The trial court should not disregard the verdict but

13.

instead consider the proper weight to be accorded to the evidence and then decide whether the verdict is supported by sufficient credible evidence. (*Id.* at pp. 729-730.) The presumption that the verdict is correct, however, does not affect the court's duty to apply its independent determination to the probative value of the evidence. (*People v. Dickens* (2005) 130 Cal.App.4th 1245, 1252.)

In *Robarge, supra,* 41 Cal.2d 628, the Supreme Court found an abuse of discretion when the trial court denied a motion for a new trial. The trial court had stated the jury was the sole judge of witness credibility, even if the court disbelieved what the witnesses said, so long as sufficient evidence existed to support the jury's decision. (*Id.* at p. 634.) *Robarge* held "it is the province of the trial judge to see that the jury intelligently and justly performs its duty and, in the exercise of a proper legal discretion, to determine whether there is sufficient credible evidence to sustain the verdict." (*Ibid.*) The Supreme Court reversed because the trial court made remarks which clearly showed it disbelieved a key witness but felt bound by the jury's contrary conclusion. As a result, it was determined the trial court "failed to give defendant the benefit of its independent conclusion as to the sufficiency of credible evidence to support the verdict. [Citations.]" (*Ibid.*) The judgment and order denying the motion for a new trial were vacated with directions for the lower court to rehear the motion. If the trial court determined that a new trial should be granted, the defendant was entitled to a new trial on the merits. If it was determined that the new trial should be denied, then the trial court was directed to pronounce judgment again upon the defendant. (*Id.* at p. 635.)

In *Davis, supra,* 10 Cal.4th 463, the defendant was sentenced to death. (*Id.* at p. 487.) He raised numerous issues on appeal, including that the trial court used an improper standard of review when denying his motion for a new trial. (*Id.* at p. 523.) The defendant claimed the trial court made statements which suggested it was only focused on sufficient evidence to support the jury's finding, and not on conducting an independent review of the evidence. (*Ibid.*) The *Davis* court disagreed, determining the

14.

trial court expressly articulated the correct standard of review, and it independently determined the credibility of the witnesses and the probative value of the evidence. *Davis* believed it was clear from the record the trial court did not regard itself bound by any of the jury's findings. (*Id.* at p. 524.)

In *Fuiava, supra,* 53 Cal.4th 622, the defendant was convicted of first degree murder and premeditated attempted murder. (*Id.* at p. 634.) The trial court denied a motion for a new trial, finding overwhelming evidence of guilt. (*Id.* at p. 729.) The trial court found a prosecution witness credible; it accepted the prosecution's interpretation of the defendant's jailhouse conversations; it found the defense version of events inherently unlikely; it found defense witnesses not credible; it found the evidence negated a self-defense claim; and it found the defendant deliberated and premeditated the murder. *Fuiava* found no abuse of discretion. (*Id.* at pp. 730-731.)

Here, similar to *Robarge*, the trial court made remarks which suggested it did not agree with the jury's verdicts and it appears the court gave evidentiary deference to the jury's findings regarding witness credibility. The court never articulated whether it found the witnesses credible or not, or whether it agreed with the jury's verdicts. Based on this record, it is impossible to know whether the trial court believed the prosecution had proven each element of the charges beyond a reasonable doubt.

Unlike in *Davis* and *Fuiava*, the trial court did not independently determine the probative value of the evidence. To the contrary, the court expressed some doubt whether it would have found appellant guilty and stated it was "absolutely irrelevant" whether it may not have agreed with the jury's verdict. The trial court did not articulate the correct standard of review, it failed to act as a 13th juror to review and independently evaluate the evidence, and it failed to give appellant the benefit of its independent conclusion regarding the sufficiency of credible evidence to support the verdicts. As such, we reject respondent's contention that a rehearing is not required. Accordingly, the

judgment and order denying the motion for a new trial are vacated and this matter is remanded for a new hearing consistent with this opinion.**2**

## DISPOSITION

The order denying the motion for a new trial is vacated and the judgment is conditionally reversed. This matter is remanded to the trial court for a rehearing on the motion for a new trial consistent with this opinion. If the trial court determines the motion should be granted, then appellant is entitled to a new trial on the merits. If it is determined the motion for a new trial should be denied, then the judgment shall be reinstated as of that date.

_____
LEVY, Acting P.J.

WE CONCUR:


_____
KANE, J.


_____
DETJEN, J.

---

**2**    In remanding, we offer no opinion regarding whether a new trial is warranted or not.

16.